<pre>
 1                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
 2                          SOUTHERN DIVISION

 3   UNITED STATES OF AMERICA        )
                                     )
 4           Plaintiff,              )
                                     ) Case Number: 8:19-cr-0570-PX
 5           vs.                     )
                                     )
 6   VANTINO JOHNSON,                )
                                     )
 7           Defendant.              )

 8
             TRANSCRIPT OF PROCEEDINGS - SENTENCING HEARING
 9               BEFORE THE HONORABLE PAULA XINIS
                   UNITED STATES DISTRICT JUDGE
10             THURSDAY, APRIL 15, 2021; 10:00 A.M.
                        GREENBELT, MARYLAND
11
                       A P P E A R A N C E S
12
     FOR THE PLAINTIFF:
13
         OFFICE OF THE UNITED STATES ATTORNEY
14             BY:  RAJEEV RAMASWAMY RAGHAVAN, ESQUIRE
               6406 IVY LANE, SUITE 800
15             GREENBELT, MARYLAND 20770
               (301) 344-4031
16
     FOR THE DEFENDANT:
17
         ROBERTS and WOOD
18             BY:  DOUGLAS J. WOOD, ESQUIRE
               6801 KENILWORTH AVENUE, SUITE 202
19             RIVERDALE, MARYLAND 20737
               (301) 699-0764
20
     ALSO PRESENT:  Irma Dasovic - U.S. Probation Department
21
         ***Proceedings Recorded By Mechanical Stenography***
22        Transcript Produced By Computer-Aided Transcription
   _____
23
                MARLENE MARTIN-KERR, RPR, RMR, CRR, FCRR
24               FEDERAL OFFICIAL COURT REPORTER
                 6500 CHERRYWOOD LANE, STE 200
25                 GREENBELT, MARYLAND 20770
                        (301) 344-3499
</pre>

```
1                        P R O C E E D I N G S

2           (Call to Order of the Court.)

3                THE COURTROOM DEPUTY:  The United States District

4    Court for the District of Maryland is now in session, the

5    Honorable Paula Xinis presiding.

6                THE COURT:  Good morning, everyone.  Give me one

7    minute.

8           (Brief pause.)

9                THE COURT:  All right.  Would the government call the

10   case.

11               MR. RAGHAVAN:  Good morning, Your Honor.  We're here

12   for a sentencing in United States vs. Vantino Johnson, Docket

13   No. PX-19-570.

14          Rajeev Raghavan for the United States.

15               MR. WOOD:  Good morning, Your Honor.  Douglas Wood

16   representing Vantino Johnson who is present.

17               THE COURT:  Okay, good morning.

18          And I see a number of people here with us today, all

19   safely with your masks on and socially distanced.  I very much

20   appreciate it.

21          Mr. Wood, are these all friends and family of Mr. Johnson?

22               MR. WOOD:  Yes, Your Honor.

23               THE COURT:  All right.  Do you expect to have any

24   witnesses testify?

25               MR. WOOD:  Yes, Your Honor.  We would just like to
```

1   call two brief witnesses, a Rasheed Howard and a Timothy

2   Hamill.

3           THE COURT:  Okay.  Again, give me one second.  I'm

4   having trouble seeing --

5       (Brief pause.)

6           THE COURT:  All right.  Before we get there,

7   Mr. Johnson, today is your sentencing.  Have you had enough

8   time to review the presentence report with your counsel so we

9   can go forward today?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.

12      And, Mr. Wood, any additions, corrections, or changes to

13  the presentence report?

14          MR. WOOD:  No, Your Honor.

15          THE COURT:  Are you making a formal motion for a

16  downward departure with regard to the criminal history score?

17          MR. WOOD:  Yes, I am, Your Honor.

18          THE COURT:  All right.  So then before I adopt the

19  presentence report in total, I'll hear you on that.

20      But let me turn to Mr. Raghavan.  Any additions,

21  corrections, or changes?

22          MR. RAGHAVAN:  Not from the government, no, Your

23  Honor.

24          THE COURT:  Okay.  So then let's first take up the

25  question of criminal history score.  And I see Ms. Dasovic

1   here.  Good to see you.  Well done report as always, but before

2   I adopt it, I'm just going to figure out what the ultimate

3   score will be.  Okay?

4           MS. DASOVIC:  Yes, Your Honor.

5           THE COURT:  All right.  Mr. Wood.

6           MR. WOOD:  Yes, Your Honor.

7       I think it's pretty straightforward.  My client was given

8   three points for his criminal history based on a driving while

9   suspended charge, which was based on his failure to pay a

10  ticket in North Carolina.  As a result of failure to pay that

11  simple ticket, he got his license suspended.  He ended up

12  pleading guilty to driving while suspended and was on

13  unsupervised probation at the time of this offense.

14      So for that conduct, he got three additional points, which

15  I think, Your Honor, in the scheme of things, very much

16  overstates his criminal history because -- obviously, it's hard

17  to think of a less minor charge that doesn't reflect on his

18  character.  It doesn't reflect on violence.  It doesn't reflect

19  on really anything other than simply failure to pay a ticket,

20  which happens routinely to many people when they wake up and

21  their license is suspended.

22      And so I think, Your Honor, a more appropriate criminal

23  history category would be Category I based on his prior plea in

24  Charles County for the handgun, but I don't think he should be

25  given those three points for that type of offense.

1          THE COURT:  And I take it the sentencing in the La

2    Plata case has not occurred?

3          MR. WOOD:  That's correct, Your Honor.  It will occur

4    sometime after this.

5          THE COURT:  Okay.

6       All right.  Mr. Raghavan, do you wish to be heard?

7          MR. RAGHAVAN:  Yes, Your Honor.  Thank you.

8       The government believes that the Criminal History Category

9    in the PSR is accurate in this case, and the government

10   believes so, Your Honor, because, one, it's necessary to

11   separate the three points; one, which was for driving with a

12   suspended license, and, two, which is because the defendant was

13   on unsupervised probation when he committed the instant

14   offense, Your Honor.

15         THE COURT:  But you have to agree, Mr. Raghavan, I

16   mean, driving on a suspended license, but for the grace, we

17   probably all at some point knowingly or unknowingly have not

18   taken care of some traffic issue that suspends our license and

19   then we get a PBJ.  And, you know, it is -- would you agree

20   it's of the most minor?  It doesn't get much more minor than

21   that.

22         MR. RAGHAVAN:  Yes, Your Honor.

23         THE COURT:  Okay.

24         MR. RAGHAVAN:  And as the government has noted, this

25   is the defendant's first serious criminal offense.  The

1  government did note that in the sentencing memo, but the

2  government would, nonetheless, point out that the two points

3  for committing the instant offenses, the multitude of offenses

4  in this case while on probation is something that's necessary

5  to consider by the Court when determining the 3553(a) factors.

6          THE COURT:  Okay.  So it has always been my

7  understanding -- and I think this is well-settled law -- that

8  downward departures for over representation of criminal history

9  is actually one of the few encouraged departures.  It's the

10  place where the guidelines tell us judges to look very

11  carefully because each specific circumstance of criminal

12  history can be different.

13      And in this case, I do find that three points in a

14  criminal history which jumps a person from -- Mr. Johnson from

15  a one to a three is simply over representative or overly

16  punitive.  It does not accurately capture Mr. Johnson's danger

17  or risk of recidivism given all that I know about him.

18      We'll talk about the offense for sure, because it's quite

19  serious, and I do note that granting this motion doesn't change

20  the guideline calculation all that much because of where

21  Mr. Johnson is in the guideline chart.  To go from a three to a

22  one on the low end reduces the advisory guideline prison

23  sentence by ten months.  So it is not -- when we talk about it

24  in months, it really does, to me, warrant granting the

25  departure.  So I am going to depart.

1          Mr. Johnson, you still have your case in La Plata that

2     that court is going to do what that court is going to do, and

3     I'm not going to say whether whatever I give you should run

4     concurrently or consecutively.  That will be up to that judge.

5          But in light of that, it is a fair adjustment in my view

6     to adjust downward by two criminal history categories and to

7     place you at a Criminal History Category I.

8          So that will be an offense level 22 and a Criminal History

9     Category I.  Do I have that right, Counsel?

10              MR. RAGHAVAN:  Yes, Your Honor.

11              THE COURT:  Okay.

12          And, Ms. Dasovic, if you would make that adjustment --

13              MS. DASOVIC:  Yes, Your Honor.

14              THE COURT:  -- that would be great.  And, otherwise,

15     I adopt the presentence report.  Thank you.

16          Okay.  All right, let's now turn -- Mr. Wood, let's hear

17     from your character witnesses and then I'll hear from you as to

18     the recommended sentence from the defense and then you,

19     Mr. Raghavan.  Okay.

20              MR. WOOD:  Fine, Your Honor.  I would first like to

21     call Timothy Campbell who is my client's stepfather.  If he

22     could come forward.

23              MR. CAMPBELL:  Good morning, Your Honor.

24              THE COURT:  Good morning.

25              MR. WOOD:  Sir, in a loud, clear voice, could you

1  please state your full name.

2          MR. CAMPBELL:  Yes.  My name is Timothy Campbell.

3          MR. WOOD:  Maybe pull yourself closer to the

4  microphone.

5          MR. CAMPBELL:  Yes.  Timothy Campbell.

6          MR. WOOD:  And, Mr. Campbell, where do you live, just

7  generally?

8          MR. CAMPBELL:  I live in Largo, Maryland.

9          MR. WOOD:  Okay.  And what is your relationship with

10  Vantino Johnson?

11          MR. CAMPBELL:  Tino's stepfather.

12          MR. WOOD:  Okay.  And how long have you been his

13  stepfather?

14          MR. CAMPBELL:  Since, I guess, he was three or four.

15  His mother and I were together at the time.

16          MR. WOOD:  All right.  What would you like to tell

17  the Court about Mr. Johnson?

18          MR. CAMPBELL:  I would just like to tell the Court

19  that Tino never been any kind of problem child at all.  He

20  never got in any trouble when he was younger.

21      And I guess you send your kid off to college and you

22  expect, you know, they're okay.  And I guess when he went to

23  college, things were -- not being in contact with him as much

24  because he was in college, I understand kids get into, you

25  know, drugs and drinking and parties and things like that.

1   And, of course, it was a shock or disappointment to me when I

2   found out about it.

3       And his grandmother has been very supportive in -- well,

4   everybody who is positive in his life have been very supportive

5   of, you know, him staying out of trouble and being responsible

6   and, you know, just holding yourself accountable for whatever.

7       And I guess maybe he developed a thing where he didn't

8   want to ask anybody for anything.  You know, maybe he just

9   wanted to be accountable and just take care of things he needed

10  to take care of rather than asking for help, and I guess that's

11  what got him into what he is into now.

12      I will take partial responsibility as far as not being in

13  touch and, you know, things not working out between his mom and

14  I, because, you know, things kind of got rough.

15      He has two younger sisters that he's a positive role model

16  in their life, and he's never been in any trouble.  You know, I

17  mean, he go from wanting to be an anesthesiologist to us being

18  here.  So it's probably more of a disappointment to himself and

19  him trying to get back on the right track.

20      As you can see, he has a lot of positive friends in his

21  life.  You know, I know especially Keith, and he has a

22  beautiful girlfriend in his life that's a positive role model.

23              THE COURT:  Mr. Campbell, can you do me a favor?

24              MR. CAMPBELL:  Yes.

25              THE COURT:  Do you know most of the people here or

1    all of the people here?

2           MR. CAMPBELL:  Yes.  Well, I know his girl.  I know

3    Keith.  Yes, for the most part.  Yes, I do.  I do.

4           THE COURT:  Okay.  Would you mind just telling me who

5    is here, introducing them in your own -- and you feel free, if

6    it's easier for you, you're encased in plexiglass and you're

7    several feet away from everybody.  So if it's easier, feel free

8    to take off your mask.

9           MR. CAMPBELL:  Okay.  All right, this is Keith right

10   here.  Keith, him and Tino have known each other since they

11   were younger, and they also -- not went to the same college,

12   but they've always been really close, if not probably his best

13   friend.

14          And his girlfriend Deja, you know, he's been with her for

15   a while.  The first girlfriend I know of that, you know, he's

16   been involved with.

17          His godfather, Rocky, he's here.  His dad, I know his dad

18   really well, you know, from day one.  His grandmother was not

19   able to make it.  She's in Carolina and was having some health

20   issues.

21          I don't know all of their names.

22          THE COURT:  If there is anyone else who wishes to

23   introduce yourself, feel free to stand up and just let me know

24   who you are.

25          MR. JONES:  My name is Victor Jones.  I'm Vantino's

1   father.

2          THE COURT:  Good to meet you, Mr. Johnson.  Thank you

3   for coming.

4          MS. HOWARD:  Hi.  My name is Michelle Howard.  I'm a

5   -- Vantino's god mom and wife of Rasheed Howard.  I've know

6   Vantino for -- (inaudible) -- years --

7          THE COURT:  Okay.  It's good to see you, Mr. and

8   Mrs. Howard.

9       Okay.  Sorry for that interruption, Mr. Campbell.  You

10  just mentioned it and so I didn't want to lose the thread.

11         MR. CAMPBELL:  So he don't have any negative

12  influences in his life.  Like I said, all of his friends are

13  here if he had went to college with them.  And, you know, they

14  are very intelligent guys.  They finished college and are still

15  conducting themselves -- I guess being a positive role model in

16  society.

17      And, you know, Tino, he just want to be able to I guess

18  feel like his -- well, he's on the right track, but, you know,

19  he has to, I guess, serve his debt to society for what, you

20  know, he's done wrong, and he's ready to do that.  He just want

21  to be able to not let this hinder him to the point where he --

22  you know, he won't be able to go where he want to go as far as,

23  you know, being in anesthesia.

24      You know, he finished his degree, and he just want to be

25  able to serve his debt to society and, you know, be able to

1  continue, you know, like his friends.

2        THE COURT:  Mr. Campbell, I take it you've been in

3  touch with your stepson for the last 17 months while he's been

4  on release.  Is that fair?

5        MR. CAMPBELL:  Yes.

6        THE COURT:  Tell me what changes, if any, you've seen

7  in him.  What has been -- what has it been like for Mr. Johnson

8  to be under the watchful eye of the Court for this time?

9        MR. CAMPBELL:  Well, to be honest with you, like I

10 said, since -- he's never been a problem child.  So I can't say

11 his -- you know, like he's not going from being I guess a

12 person that's been problematic but now he got himself into

13 trouble.  He's rehabilitated mentally, as far as making, you

14 know, the bad decision he made; but as far as his attitude

15 change, it hasn't changed because he never had a bad attitude

16 or anything like that.

17    I would say his attitude has remained intact and it's more

18 of trying to -- I guess, you know, fear of not knowing what the

19 consequences will be -- have been -- probably, you know,

20 bringing him to a state of just being more quiet if anything.

21 But his attitude as far as going from bad to good, I mean,

22 there was never a bad.  So he's the same.

23       THE COURT:  But you're saying, like, he's not been

24 discouraged either?  He still has his eyes on accomplishing the

25 things that he wanted to do before he committed these crimes?

1          MR. CAMPBELL:  Right.  And I would say -- I can't say

2   the exact date that this happened, but he finished his degree

3   I guess after the thing, this situation happened.  So I would

4   say that says that he continued.  Rather than dropping out, he

5   continued to push forward.

6      As far as work, he worked with his godfather Rocky, as

7   well as myself as far as just, you know, keep on working and

8   just staying motivated.

9          And, actually, his lady here, she -- you know, spending

10  time with her and just staying out of society -- and this is

11  before COVID.  You know, a lot of people stay in because of

12  COVID, but he's actually just been, you know, low key and just

13  taking care and working and conducting himself in a proper

14  manner.

15          THE COURT:  Okay.  Thank you, Mr. Campbell.  I really

16  appreciate it.

17          MR. CAMPBELL:  All right.

18          THE COURT:  Is there anything else you wish for me to

19  know?

20          MR. CAMPBELL:  I guess more importantly, he don't

21  want to disappoint his grandmother, which she knows about this.

22  She's -- well, as opposed to himself, she's probably more

23  shocked more than anything, and he just want to be able to make

24  her happy and proud of him more than anything.

25          THE COURT:  Okay.  Thank you.  I hope that whatever

1   is ailing her right now she recovers.

2           MR. CAMPBELL:  Yes.

3           THE COURT:  Because it sounds like they have a

4   special relationship.

5           MR. CAMPBELL:  It is.

6           THE COURT:  Okay.  Thank you.

7           MR. WOOD:  Your Honor, we would next call our last

8   character witness, Rasheed Howard.

9           THE COURT:  Okay.

10          MR. WOOD:  Mr. Howard, come forward.

11          MR. HOWARD:  Good morning, Your Honor.

12          THE COURT:  Good morning.

13          MR. HOWARD:  My name is Rasheed Howard.

14          MR. WOOD:  Mr. Howard, where do you live?

15          MR. HOWARD:  Accokeek, Maryland.

16          MR. WOOD:  And how old are you, roughly?

17          MR. HOWARD:  I just turned 47.

18          MR. WOOD:  Okay.

19      Could you tell the Court a little bit about Tino Johnson,

20  what you know of him and what you think of his character.

21          MR. HOWARD:  Well, I would have to start just from

22  when he was a child.  I heard everything his stepfather said,

23  but I have to expound on some different areas where he had

24  challenges.  You know, his father, I've known him since he was

25  six years old.  His grandmother -- I was sort of like -- I had

1   trouble in my own life, and she took me in and really kind of

2   saved my life then.

3       So but his father had been drug addicted for maybe

4   22 years now, and it was not easy for him as a child seeing

5   that.  And his mom, I mean, I don't want to say anything but it

6   was -- he suffered a little bit of abusive situation there,

7   too.  And I saw him.  I tried to, you know, keep him positive

8   and do things for him, and any time I could talk to him -- you

9   know, I have three kids of my own, but any time I could spend

10  with him and talk to him, I would try to be very positive with

11  him and -- very positive with him.

12      He had to move in with his grandmother going into high

13  school because of the home situation that he was in.  He was

14  having trouble in school, and once he moved in with his

15  grandmother, I had a little bit more access to him because she

16  didn't live that far from me.  And she tried her best, and he

17  did well, and he actually was accepted into college after

18  moving in with his grandmother because if he never did that,

19  maybe that wouldn't have happened because it was not easy for

20  him.

21      Tim did a good job as a stepfather, but Vantino, he was

22  looking for his dad, you know, and his dad did the best he

23  could do with what he was going through, and it was not easy

24  for him.

25      So going off to college, I know he was not given -- my

1    three kids -- me and my wife has been together all their lives.

2    All of them college, you know, but we were there during that.

3    He did not have that, and he could not get all of that from his

4    grandmother because she spoiled him because she knew what he

5    went through.

6         The fact that he graduated college is like very big for

7    me.  So when I found out about this, because he is a good young

8    man, it hurt me because I kind of thought maybe I didn't help

9    him enough.  He didn't ask but when he asked, I would send him

10   money.  If he came home, I let him work for my business, try to

11   pay him.  Tim would try to pay him.

12        But I just don't think he had all the help he should have,

13   that maybe my children had.  And I'm not making any excuses for

14   what he did, but I can understand by not having that, how you

15   can make a choice like that.  You know, because a lot of my

16   friends coming up, they didn't have both parents and lived in

17   certain situations.  They made those type of choices.

18        You have to have guidance.  You have to have certain

19   things instilled in you, or you will make a choice like that if

20   you're thrown out into the real world without that.  And it

21   just hurt me.

22        I know he's remorseful because he has told me.  Sometimes

23   I talk to him, you know, and he try to be upbeat but the next

24   minute, you know, he's depressed because he can't take anything

25   back.

1        And I understand for all our actions, we have to pay for

2    it, but I just think that he can do something to be of help

3    maybe to the community, talk to young people and avoid them

4    from making these same choices, because when they get out on

5    their own and so-called adults, if they don't have everything

6    they need in their character, it's very easy to make a mistake.

7        But I love him.  Like I said, I'm not making any excuses

8    for him because we all know right from wrong.  And I just beg

9    the Court to just look at all he's done.  And I know what he's

10   done right, and he's done wrong, but his whole life cannot be

11   judged off of one mistake.  It has to be, you know, taken into

12   consideration that he has done a lot of good with the situation

13   that was presented before him.

14       That's all I can pretty much say about that.

15            THE COURT:  Thank you, Mr. Howard.  I very much

16   appreciate it.

17            MR. HOWARD:  Thank you.

18            THE COURT:  Mr. Wood, is there anyone else who wishes

19   to speak?

20            MR. WOOD:  No, Your Honor.  Thank you.

21            THE COURT:  Okay.

22            MR. WOOD:  Would you like me to go now?

23            THE COURT:  Yes, please.

24            MR. WOOD:  Yes, Your Honor.

25       I can appreciate that all sentencings are difficult for

1  the Court, but I think this case is probably one of the more

2  difficult ones because you have before you someone with so much

3  promise.  I think his stepfather and his uncle here alluded to

4  the fact that while growing up, it wasn't the ideal way to grow

5  up because his father, his natural father, maybe through no

6  fault of his own, had his own problems with drugs.

7      His relationship with his mother wasn't good, but despite

8  all of that, this is a young man who went to live with his

9  grandmother, and something inside him allowed him to graduate

10 from high school and then go on to college, and he has

11 completed all of his coursework for a degree in biology and

12 chemistry, which are not easy subjects.  So that I think tells

13 you something about him.

14     And as one of the witnesses mentioned, even after his

15 arrest in this case, the Court was kind enough to allow him to

16 go back down to North Carolina and complete his coursework.

17 And despite the fact that this was hanging over his head, he

18 was able to focus and do that.  So I think there's a lot in

19 this man, in this young man which bodes very well for the

20 future.

21     As you can see from the people who have come to court, he

22 surrounds himself with very good people, which I think is very

23 positive.  There is no history of any drugs or alcohol abuse in

24 his background.  So he doesn't have to overcome that, which a

25 lot of people do have to overcome.

1      Simply, the penalty of the conviction will stay with him.

2 It's never going to be erased from his background.

3      And I don't know so much if medical school is one of his

4 options, but I certainly know research in the fields he

5 graduated in was something he was very much interested in, and

6 I don't know -- probably this conviction would preclude him

7 from doing those things.

8      So the conviction alone is going to be a very heavy

9 penalty.

10      THE COURT:  Can you address, Mr. Wood, why?  You

11 know, and maybe Mr. Johnson is going to speak to that.

12      Mr. Johnson, you have the absolute right to remain silent.

13 You don't have to tell me anything.

14      But, Mr. Wood, for you, you know, help me understand how

15 Mr. Johnson, who was doing so well -- I mean, most parents --

16 and I'm putting myself in that category -- would be so proud to

17 have a child in a school taking on not one but two extremely

18 hard majors.  I mean, you know, I did history and English

19 because I couldn't do biology.  So this is to me, you know,

20 the -- a real mark of his character.

21      And yet to engage in this conspiracy with Mr. Beamon that

22 is protracted and involved, and it obviously shows Mr. Johnson

23 is quite smart.  But how did it come to this?

24      MR. WOOD:  You know, Your Honor, I kind of knew you

25 were going to ask that question, and I thought a lot about it.

1    And in some ways, even though Mr. Johnson is 23, I think we see

2    sometimes with young adults, they are really not -- they can

3    look mature, act mature, do mature things like get degrees in

4    very difficult subjects, but their judgment is not mature.  And

5    I think that may be the problem here because, again -- and I

6    just know from my own personal practice in representing many

7    defendants, defendants who come from two-parent homes, which

8    are very structured, are much different than people who come

9    from broken homes.

10        And even though Mr. Johnson has done very well and is very

11   intelligent, he did come from a broken home, and the advantage

12   of having two parents there most of the time is that they guide

13   you.  They give you a sense of right and wrong and they teach

14   you good judgment.

15        And I'm sure Mr. Johnson fell into this and saw this

16   scheme, which lasted five months, and he made money out of it.

17   And I think certainly in retrospect he knows he did a very bad

18   thing, and if he had used better judgment, this wouldn't have

19   occurred.

20        I don't have any magic answers as to why it occurred

21   because, again, when you look at Mr. Johnson --

22             THE COURT:  What was the relationship between

23   Mr. Johnson and Mr. Beamon?

24             MR. WOOD:  They were good friends.  They grew up

25   together.  And so that was the relationship.

1          THE COURT:  Okay.

2          MR. WOOD:  So, you know, sometimes when young people

3   put their heads together, they come up with pretty lame ideas

4   and this is probably -- this is certainly a very lame idea.

5          But in terms of going forward, there is nothing that he's

6   done or nothing in his background which would indicate that

7   this would occur again or he can't be rehabilitated and he

8   can't do very positive things in his life.  And I know from

9   talking to Mr. Johnson, he's very ambitious.  He wants to do

10  well in this world.  He wants to do well financially.  He wants

11  to do well for other people.

12         And, you know, the other interesting thing when I looked

13  at the presentence report, you notice all the types of jobs he

14  had when he was in school, and they are basically menial type

15  jobs, which are good for a young person, and he did them well

16  and he did them continually.  So he has a very strong work

17  ethic, which I think the Court can rely on and say, well,

18  what's going to happen to him in the future?  Well, he has a

19  very strong work ethic.  He's very intelligent.

20         I wish I could really give you a perfect answer as to why

21  this happened and I simply can't, but I just don't think, given

22  the things I know about Mr. Johnson, that there is any chance

23  of this ever reoccurring.  He's got some very big ideas, very

24  ambitious young man, and I think once this is behind him, he'll

25  do very well in life.

1          I hope -- I'm sure that didn't answer your question but --

2               THE COURT:  No, thank you.  I appreciate that.

3               MR. WOOD:  And also, one of the things that has been

4     noted in the presentence report, that while he's been on

5     supervision, he did notice that he had some anxiety problems

6     and depression, and he was more than willing to deal with that,

7     and I think he's continuing to deal with that now.  So I think

8     that's been insightful for him while he's been under

9     supervision for these past almost a year and a half.

10              THE COURT:  Do you know who's been his provider?

11              MR. WOOD:  Pardon me?

12              THE COURT:  Who have you seen, Mr. Johnson?

13              THE DEFENDANT:  Insight Treatment Center.

14              THE COURT:  Okay.  One-on-one or group or both?

15              THE DEFENDANT:  Say that one more time.

16              THE COURT:  Are you doing one-on-one or group or

17    both?

18              THE DEFENDANT:  One-on-one.

19              THE COURT:  One-on-one?

20              THE DEFENDANT:  Yes, ma'am.

21              THE COURT:  All right.

22              MR. WOOD:  So I think that's very positive because

23    many people who suffer from low levels of anxiety and

24    depression, it can really get them sidetracked.  So that's

25    actually one very positive thing that's come out of this whole

1  situation.

2      But, again, Your Honor, it's very difficult to figure out

3  what would a lengthy jail sentence do in this case for this

4  young man because -- I wish I could say please put him on

5  probation, but I understand where we are.

6      I think a short period of incarceration is more than

7  enough to satisfy everything we need to satisfy, which is the

8  community will be protected.  It's certainly very much a

9  deterrence to other people when they find out -- and this is

10  basically a white collar criminal event, that if he serves a

11  small period of incarceration, that certainly is a great

12  deterrent.

13      And I would ask the Court to consider just imposing a very

14  short period of incarceration.  I know that my client -- and I

15  don't know if the Court wants to address it now.  Hopefully the

16  Court will let him voluntarily surrender.  He has graduation I

17  think on May --

18              THE DEFENDANT:  May the 16th.

19              MR. WOOD:  May 16th.  So if he could remain out in

20  the community.

21              THE COURT:  Yeah, unless the government has some big

22  surprise waiting, the pretrial report notes that, Mr. Johnson,

23  you've done quite well since the February 2020 incident.  You

24  have turned that completely around.  I'm so glad that you're

25  continuing with counseling.  I think it's fair to say we all

1   need it at some point.  Those of us who actually run toward it

2   are better for it.  So I have no issue with continued release.

3           MR. WOOD:  Thank you.

4       So that's really all I have to say.  Thank you, Your

5   Honor.

6           THE COURT:  Okay.  Thank you, Mr. Wood.

7           MR. RAGHAVAN:  Your Honor, may I speak at the podium?

8           THE COURT:  Sure.

9           MR. RAGHAVAN:  Thank you.  Thank you, Your Honor.

10      Your Honor, the government would -- I know that the Court

11  considered the government's submission in this case.  The

12  government would just like to add a few more points to what has

13  already been submitted and then discuss today.

14      Your Honor, the government submits that a sentence of

15  41 months, which is the low end of the current guideline

16  sentence with a downward variance, Your Honor, is the

17  appropriate punishment --

18          THE COURT:  You mean departure?  I just want the

19  record to be clear.  I departed.  And so now we're at the point

20  where we're considering Mr. Wood's request for a variance from

21  that.

22          MR. RAGHAVAN:  I apologize, Your Honor.  Yes, a

23  downward departure, not the variance.  The government would

24  oppose the variance, and I will get to that in a few minutes.

25          THE COURT:  Okay.

1          MR. RAGHAVAN:  But in light of the downward

2   departure, the 41-month sentence the government believes is an

3   appropriate sentence in this case based upon the 3553(a)

4   factors, and the government would like to focus on two points

5   today.

6          First, the nature and circumstance of this very serious,

7   long-running, sophisticated offense; and second, Your Honor,

8   the defendant's choice to participate in this offense and his

9   choice to put his gifts and abilities toward criminal conduct

10   for such a protracted period of time.

11          In noting this, Your Honor, as we delineated in the

12   stipulated facts, the government -- the defendant and his

13   co-conspirators were responsible for approximately a half a

14   million dollars in the negotiation of stolen postal Money

15   Orders.  The defendant himself was responsible for

16   approximately $150,000 of that himself, negotiating those into

17   bank accounts that he controlled.

18          The scheme, as committed by the defendant and his

19   co-conspirators, was a relatively sophisticated one, and the

20   defendant, he played an integral role in that scheme.  He stole

21   postal Money Orders from the post offices.  There is a

22   photograph of him, as the government submitted with its

23   sentencing memo, where a postal employee took a photograph of

24   the defendant attempting to steal postal Money Orders.

25          Between May and July 2019, the defendant stole 188 blank

1   postal Money Orders from the very same post office where a

2   photograph of him was taken.  These were then altered -- 144 of

3   these were altered by the defendant to be either $800 or $1,000

4   and then they were negotiated at victim financial institutions

5   using the identities of individual victims and in bank accounts

6   opened in their names.

7          Further evidence, Your Honor, of the defendant's

8   participation in this criminal conspiracy was evidence when law

9   enforcement searched his two residences in North Carolina, the

10  location where he was going to college.  There, Your Honor, at

11  the Walden Station residence, in the defendant's bedroom law

12  enforcement found $1 altered Money Orders, three of which had

13  been altered to -- four of them had been altered to $1,000.

14  And Money Orders stolen from the Davidsonville Post Office, the

15  Lowell Post Office, and the Harwood Post Office.

16         To put that in context for the Court, Your Honor, the

17  Harwood and Davidsonville Post Offices are in Maryland.  The

18  Lowell Post Office is in North Carolina.  The defendant was

19  committing its criminal acts in both Maryland as well as in

20  North Carolina.

21         In order to modify these stolen Money Orders, the

22  defendant and his co-conspirators would use printers to print

23  amounts of either $800 or $1,000 on them and then issue dates

24  and post office zip codes so that they would be accepted by the

25  victim financial institutions.

1          In order to do this, Your Honor, as discussed in the

2     sentencing of Mr. Beamon, the defendant and his co-conspirator

3     would print trial runs on blank pieces of paper, essentially,

4     to ensure that when they printed this on stolen postal Money

5     Orders, they lined up in the appropriate locations and that

6     they would be able to pass these off at the victim financial

7     institutions, ensuring that they didn't have to use any of the

8     stolen postal Money Orders that they had to do these trial runs

9     or wasting -- ensuring a maximum return of investment for their

10    crimes in this case.

11         They then, with these stolen postal Money Orders,

12    deposited these into bank accounts in the names of identity

13    theft victims, bank accounts opened in these victims' names.

14    Twelve such instances were set forth in the stipulated facts,

15    and in these 12 instances, Your Honor, 11 of them, 11 separate

16    victims were used in order to negotiate these postal -- stolen

17    postal Money Orders.

18         In the defendant's residence there were deposit receipts

19    and debit cards for bank accounts opened in other people's

20    names.

21         THE COURT:  Mr. Raghavan, can you help me with

22    placing the defendants in relation to one another for purposes

23    of unwarranted disparity?  I mean, I've sentenced Mr. Beamon.

24    Mr. Beamon had very different conduct in my view and ten plus

25    guns and -- you know, it seems to me, reading between the

1  lines, that Mr. Beamon had more of a leadership role even

2  though he might not have been entitled -- like, neither of the

3  defendants really entitled to a role adjustment under the

4  guidelines, but I want to hear from the government on that.

5           MR. RAGHAVAN:  Your Honor, speaking first as to the

6  leadership role and then I'll get to the disparity issue, the

7  government does not believe that there was -- believes both

8  defendants were equally culpable.  Both defendants participated

9  in every act necessary to commit these crimes.

10      As Mr. Beamon's defense counsel noted, there wasn't

11 evidence of Mr. Beamon having stolen postal Money Orders, and

12 you compare that with Mr. Johnson in this case who there is

13 evidence of him stealing postal Money Orders from victim post

14 offices.  In regards to that, Your Honor, the government does

15 not believe that there is -- believes that accounting for a

16 ten-month difference in sentences would ensure that there is

17 not an unwarranted disparity.  So 41 months versus a 51-month

18 sentence.

19      The government would argue that based on the fact that the

20 length of conduct for which Mr. Beamon was being sentenced was

21 not just possession of those firearms, Your Honor, but also his

22 protracted involvement for approximately the same five months

23 in the scheme, at the end of the day, Your Honor, the

24 government would argue that both defendants were substantially

25 committing the same crimes.  They were committing the same

1  acts.

2          THE COURT:  But just so the record is clear, I mean,

3  Mr. Beamon did have ten separate firearms.  I thought one was a

4  ghost gun, another one was an AR-15 or the ghost gun was an

5  AR-15.

6          MR. RAGHAVAN:  Yes.  They were both the same, yes.

7          THE COURT:  I mean, he's running a different business

8  in that regard, and I believe he pled guilty to two offenses

9  that I had to -- two separate cases, if you will, that I had to

10  sentence him for.

11          MR. RAGHAVAN:  Yes, Your Honor.

12          THE COURT:  So, you know, it is -- it's fair in that

13  respect that they are different.  Correct?

14          MR. RAGHAVAN:  Yes, Your Honor, that is correct.

15  It's fair in that case that they are different, especially in

16  regards to the number of firearms that Mr. Beamon posed and the

17  number of ammunition that he posed.

18      The government would note that Mr. Johnson also possessed

19  a firearm, as was recovered from his vehicle by law enforcement

20  when they found him in Maryland, and it was a loaded firearm as

21  well.  But the government would, nonetheless, argue that when

22  looking at these two defendants, when looking at the acts that

23  they did in order to effect this conspiracy, when looking at

24  the return of the money that they negotiated, Mr. Beamon -- and

25  I apologize.  I don't have the number off my head.  I believe

1   it was about $120,000.

2            THE COURT:  I was going to ask if you recall what the

3   amount -- they definitely pled to the same loss amount.

4            MR. RAGHAVAN:  Yes, Your Honor.  I believe it's in

5   the stipulated Statement of Facts, and I can -- it is not, Your

6   Honor, but I believe Mr. Beamon was 120,000, approximately.

7            Mr. Beamon was approximately $120,000 that he had

8   personally negotiated into bank accounts that he had

9   controlled, contrast to Mr. Johnson who negotiated

10  approximately $150,000 into bank accounts that he controlled.

11           THE COURT:  Okay.  Got it.  Wait -- hold on.

12           MR. RAGHAVAN:  Yes, Your Honor.

13           THE COURT:  I'm looking at Mr. Beamon's plea

14  agreement.

15           MR. RAGHAVAN:  And if I'm mistaken, Your Honor, I

16  apologize.

17           THE COURT:  It's $529,000.  There was an agreed upon

18  restitution order.  That's at least what the plea agreement

19  says.  I'm looking at the right agreement.

20           MR. RAGHAVAN:  Your Honor, it should be in the same

21  paragraph.  It should say Beamon personally negotiated --

22           THE COURT:  No, understood, but there is a

23  restitution amount agreed upon for Mr. Johnson.  Right?

24           MR. RAGHAVAN:  It is.

25           THE COURT:  That is what?

1            MR. RAGHAVAN:  It's $272,000, approximately.  It's

2    the same for both of them and it is joint and several.

3            THE COURT:  Let me get the number.  What's the number

4    for Mr. Johnson?

5            MR. RAGHAVAN:  $272,000, approximately, Your Honor.

6            THE COURT:  Okay.  And it's joint and several?

7            MR. RAGHAVAN:  Joint and several between the two of

8    them.

9            THE COURT:  But it's fair that it is half of the

10   restitution amount, roughly, that Mr. Beamon agreed to?

11           MR. RAGHAVAN:  No, Your Honor.  Mr. Beamon's

12   restitution amount that was submitted with the Court, the

13   victim information was the same, $272,000 as well.

14           THE COURT:  Okay.  So then the agreement that says he

15   agrees to a restitution order of $529,000 was modified?

16           MR. RAGHAVAN:  It was modified, Your Honor, to the

17   lower amount.

18           THE COURT:  Got it.

19           MR. RAGHAVAN:  And I apologize for the

20   misunderstanding there.

21           THE COURT:  Okay.  So at the end of the day, both

22   defendants agree to a restitution amount that's roughly the

23   same?

24           MR. RAGHAVAN:  Yes, Your Honor.

25           THE COURT:  Okay.  Thank you for that.

1          MR. RAGHAVAN:  Your Honor, moving to the second point
2    of the government's argument, which is the defendant's choice
3    to enter into this criminal conspiracy and his choice to engage
4    in these crimes, the government would note the long-running and
5    sophisticated nature of the scheme, which, as is clear, Your
6    Honor, it's at odds with the defendant's limited criminal
7    history.  The Court has pointed this out, and I don't believe
8    that there is any argument here.

9          This is the defendants first serious criminal offense,
10   but, Your Honor, it is an extremely serious criminal offense,
11   and the egregiousness of this offense, the protracted crimes
12   that the defendant undertook over a five-month period require a
13   sentence within the guidelines.

14         In order to realize his crimes, Your Honor, the defendant
15   committed numerous instances of theft, fraud, and aggravated
16   identity theft.  He did this repeatedly, and what he did took
17   planning and it took dedication.

18         As defense counsel has noted and the Court has noted, the
19   fact that the defendant was in college while he committed the
20   instant crime, and he was in college pursuing two majors,
21   biology and chemistry, that are extremely hard majors.  They
22   require a lot of work.

23         And it's obvious that the defendant, Your Honor, chose to
24   apply this intelligence that he has, this industriousness that
25   he had to commit crimes and that's what finds him before the

1  Court today.  The defendant had the abilities and was in a

2  position to make better other choices.  He chose not to, and

3  that conscious choice to engage in criminal conduct and the

4  harm that the defendant caused by engaging in that criminal

5  conduct to the United States Post Office, to the victim

6  financial institutions, and the individual identity theft

7  victims is what requires a serious sentence in this case.

8      Accordingly, Your Honor, a variance on that sentence down

9  to 18 to 24 months, as the defendant suggests, would send the

10  wrong message.  It would send a message that in this case, Your

11  Honor, what the defendant did was he did not commit an act.  It

12  wasn't a momentary lapse in judgment.  It wasn't something that

13  happened, a bad day on a single day.

14      What the defendant did, Your Honor, was plan and execute a

15  repeated and long-running criminal conspiracy.  He did so while

16  he was in college, and he did so in order to be able to get a

17  substantial financial gain for himself, over six figures.

18      Accordingly, Your Honor, a downward variance would not

19  meet the requirements of 3553(a) and would not reflect the

20  seriousness of this offense, promoting respect for the law,

21  assuring just punishment, and providing adequate deterrence.  A

22  serious sentence in the guidelines will provide deterrence not

23  just for the defendant but others like him who would choose to

24  put his gifts and abilities to such unlawful pursuits.

25          THE COURT:  You would agree with me, Mr. Raghavan,

1   that, you know, there's many, many ways, many arrows in the

2   Court's quiver to impose a sufficient but not greater than

3   necessary sentence?  And what I mean by that is we haven't

4   talked about the period of supervision, the length of

5   supervision, the conditions I can place on Mr. Johnson that are

6   both restorative, rehabilitative, gets restitution paid fast

7   enough -- faster, rather.

8           MR. RAGHAVAN:  Yes, Your Honor.

9           THE COURT:  And so maybe you wish to be heard on if I

10  do vary, I am varying in the prison sentence only because at

11  some point, for individuals, young promising individuals who

12  demonstrate sincere remorse, who have support, sometimes the

13  sufficient but not greater than necessary sentence has to take

14  into account that the longer I punish someone like that, the

15  greater risk they come out worse off.  Right?  That they are

16  around an element that drags them down, that takes them on a

17  worse path, and that I calibrate that by a longer period of

18  supervision with conditions that keep an individual like

19  Mr. Johnson in front of me for -- gosh, I could do half a

20  decade.  I could do five years.  Right?

21      Do you wish to be heard on the fact that there is, you

22  know, punishment that is not only prison that I can do?

23          MR. RAGHAVAN:  Yes, Your Honor.  The government will

24  be asking for five years of supervised release in this case.

25  We believe it's necessary and important because of the amount

1    of restitution the defendant does have to pay back and to be

2    able to ensure that he does pay that restitution back.

3         But the government would also note that a period of

4    supervised release, Your Honor, is not necessarily what is

5    merely just contemplated under the 3553(a) factors.  The Court

6    noted that the Court has a lot of arrows in the Court's

7    proverbial quiver.  But in this case, Your Honor, a serious

8    sentence, a serious downward variance on a sentence would not

9    send the general deterrence that's necessary.

10        THE COURT:  But general deterrence is only one factor

11   and because -- I just want the record to be clear.  I'm not

12   trying to be argumentative with you.  I just want to make sure

13   you're heard on all of the things that are in my head.

14        General deterrence is but one factor.  Do you wish to be

15   heard on the 17 months that Mr. Johnson has done well on

16   pretrial release?  I often, as just a matter of course, look at

17   that.  And Mr. Johnson certainly had a bump.  There is no

18   doubt.  That violation was, in my view, serious and he could

19   have gone either way.  He very much turned it around and has

20   had the benefit of pretrial's really good services.

21        So doesn't that mitigate against specific deterrence?

22   Don't I want to encourage defendants in the future to do what

23   Mr. Johnson did and get it together and improve himself?

24   What -- how do you want to -- do you want to address that?

25        MR. RAGHAVAN:  Yes, Your Honor.  And I would in the

1    sense that I would argue that while that is the case -- and the

2    government does not argue that other than that momentary bump,

3    Mr. Johnson has done well while on pretrial release and

4    presentence release as well.

5        But the government would also note that there is a

6    necessity for the sentence to reflect the seriousness of the

7    offense, and while it's important to consider the, you know,

8    the personal history and characteristics of the defendant, that

9    seriousness of the offense would not be adequately captured

10   within a downward variance.

11       And that -- and while the defendant has demonstrated

12   respect for the law since, you know, being on pretrial

13   supervision, a just punishment in this case, Your Honor, in

14   light of the seriousness of this offense, requires a serious

15   term of imprisonment, and that serious term of imprisonment the

16   government would argue would be at the low end of the

17   guidelines, which, at that point, Your Honor, does take into

18   account the defendant's personal history and characteristics

19   and notes that because of the fact that he has a limited

20   criminal history, as well as the fact that, you know, he has

21   been doing well while on pretrial release, a lower sentence is

22   more appropriate in this case at the low end of the guidelines.

23       But nonetheless, Your Honor, in order to ensure to the

24   Court that the factors in 3553(a) are met, the government would

25   argue that a serious period of incarceration, which is

1  41 months, is necessary in this case.

2       THE COURT:  Thank you, Mr. Raghavan.

3       MR. RAGHAVAN:  And lastly, Your Honor, the government

4  would just ask that the Court include the motion for

5  forfeiture, as well as restitution in its judgment in this

6  case.

7       THE COURT:  Okay.  And there is no objection to the

8  forfeiture motion, correct?

9       MR. WOOD:  No, Your Honor, no objection.

10       THE COURT:  All right.  So I will sign that order.

11     There is an agreed upon restitution figure.  You have sent

12  that to Mr. Ulander, as well as the payments to each of the

13  victims, and so we'll use that in the judgment, and then all

14  that's left for me to decide is the manner of payment.

15       MR. RAGHAVAN:  Yes, Your Honor.  Thank you.

16       THE COURT:  Great, thank you.

17     Mr. Wood, do you wish to be heard any further before I

18  turn to your client?

19       MR. WOOD:  Only a couple of things, Your Honor.

20     Obviously, the government makes a good point that he made

21  a poor choice here, but I think when you look at his whole

22  life, he's made so many good choices, and the good choices

23  actually, this is my opinion, overwhelm the bad choice he made

24  during that five-month period.

25     I mean, he chose to -- as a young man, he could have went

1   in the wrong direction, could have been influenced by others,

2   could have just on his own done wrong things, and he made the

3   choice not to.  He made the choice to finish high school.  He

4   made the choice to work while he was in college.  He made the

5   choice to graduate from college.  He made the choice to abide

6   by the conditions of his release in this case.

7       So we have so many good choices that this young man has

8   made.  So I think, in context, he made a bad choice here, but

9   the other choices he made I think overwhelm the bad choice he

10  made here.

11      In terms of deterrence, the government throws out a number

12  of 41 months, but I think, generally speaking, any jail

13  sentence is a deterrence.  Even if the Court gave him a year in

14  jail or 18 months in jail, that's a deterrence.  I think people

15  -- and this is just anecdotal.  People in the community say,

16  well, he committed a crime.  He went to jail.  They don't argue

17  about, well, he got 51 months, he got 24 months, or got

18  18 months.  So I don't think that's really the debate.

19      The debate usually is, well, Vantino Johnson committed a

20  crime and he went to jail, and that's the deterrence, the fact

21  that this Court may give him a small period of incarceration.

22  To give him what the government wants is not more of a

23  deterrence.  In fact, it's pretty hard to figure out how

24  41 months is more of a deterrence than 24 months or 18 months.

25      So I would say, again, the penalties this Court is going

1   to impose are going to be very severe and they certainly will

2   deter others.

3           THE COURT:  Thank you, Mr. Wood.

4       Okay.  Mr. Johnson, this is now your opportunity, if you

5   wish, to tell me anything or anyone here.  You've got so many

6   people who have come in support of you.  Again, you do not have

7   to speak.  I will not hold your silence against you, but this

8   is a day all about you.  After all, and we've been talking

9   about you for quite some time.  So if there is anything you

10  wish to say, now would be the time.

11          THE DEFENDANT:  Thank you, Your Honor.  Do you mind

12  if I step up to the podium, please?

13          THE COURT:  Sure, go right ahead.

14          THE DEFENDANT:  Thank you.

15          THE COURT:  Yep.  And if you wish, you can remove

16  your mask.  It's totally up to you.

17          THE DEFENDANT:  Well, first, Your Honor, I would like

18  to apologize to the United States of America, the postal

19  office, and my family and friends and just everybody who has

20  been counting on me all my life to do the things that I was put

21  here to do.  And my only goals in life was to, you know,

22  better -- better my family history because, like -- I'm not the

23  only one.  Like, we all in here, we all come from the same

24  place.  We all have been through the same struggles our whole

25  life.

1    So like I'm just -- my only goals in life is just to

2 change and just to make a change in life, and that's the only

3 thing that I ever wanted to do.

4    I never wanted to hurt anybody with what I did.  I never

5 wanted to --

6         THE COURT:  So, Mr. Johnson, you know what I'm going

7 to ask, right?  And your lawyer can tell you not to answer it

8 or you don't have to answer it, but I've got to hear from you,

9 if you're willing, to explain how you got into this.  What was

10 going through your head?

11    Believe me, I know there's good science that says until

12 you are 25, your brain is still forming.  You're not making the

13 best decisions for yourself.  So you don't have to put some

14 sugar on that.

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  But I do want to understand if you have

17 really wrestled with that question.  You know, why did I do

18 this?  So go ahead.

19         THE DEFENDANT:  Thank you, Your Honor.

20    It's been a question that I've been asking myself since

21 the mistake, since it happened and -- I mean, I really can just

22 say that the time of my life when I did make these mistakes --

23         THE COURT:  Crimes.  Crimes.  Say it.  They are

24 felonies, crimes.  Right?

25         THE DEFENDANT:  Yes, ma'am.

1        The time in my life that I did commit these crimes were --

2    I was in college.  I've been working since I can remember.  I

3    worked my butt off through college.  I worked like -- I worked

4    40 hours a week all college, from my freshman year all the way

5    up until I can remember.  I have always worked.  And things got

6    harder.

7        And as a kid, I didn't really feel the weight that I felt

8    when I got to a certain age and really started to realize like

9    everything that I was going through my whole life, and I

10   started to see things like, you know, things my father was

11   going through and my mom and trying to support and help my

12   little sisters more and just -- you know, I was trying to fight

13   all of these things and lift the burden off my grandma's

14   shoulder because she done so much for me.  And the only thing

15   that I really want is to help her because of how much she

16   helped me.  And she saved me, you know.  She really saved me.

17   So everything that I done was to lift that weight off of her

18   shoulders.

19       And, you know, college -- I stopped getting my scholarship

20   after my sophomore year, and it just got harder.  And I knew I

21   wanted to stay in college so I made --

22            THE COURT:  Did some of this money just go to like

23   live better, to have a couple nice things and -- I'm just -- I

24   thought I saw in one of the reports that -- and I'm not casting

25   shade on you.  I just want to understand it.  There were some

1   nice things seized.  You know, Chanel shoes.  Maybe that was

2   your co-defendant.  I don't remember.

3        But I'm just trying to get at sort of what happened to

4   this money.  What were you doing with it?  It was a lot and a

5   lot of people -- you know, there are people behind all of these

6   institutions and these names that you used.

7                THE DEFENDANT:  Yes, ma'am.

8                THE COURT:  So I want to understand where the money

9   went.  Maybe that's a better question.

10                THE DEFENDANT:  Okay.  Really, I paid for some of my

11   tuition, living expenses.  I had to move off campus after my

12   sophomore year because I could no longer like afford to pay

13   tuition and pay for like college dorm.  So I had to move off

14   campus and work and just pay rent.  So I had a lot of

15   responsibilities at that time, and that's where most of my

16   money went to, was to my responsibilities.

17        I don't -- honestly, Your Honor, I don't know where the

18   big number came from and -- so I take full responsibility for

19   everything that I've done, and I take accountability for

20   everything that was taken.

21                THE COURT:  Okay.  I appreciate that.

22        So I interrupted you, Mr. Johnson.  Is there anything else

23   you wish for me or anybody else here to know?

24                THE DEFENDANT:  I just hope that you are able to, you

25   know, sentence me to what you feel is right.  And I take

1   responsibility, and I take -- whatever happens, I am going to

2   become something great in life, and I won't let this hinder me.

3   No matter what the consequence is, I won't let this hinder me

4   from being who I know that I am, who my grandma raised me to

5   be.  And I will overcome this.

6           THE COURT:  And, Mr. Johnson, I've got to tell you

7   two things while you're in front of me.

8           THE DEFENDANT:  Yes, ma'am.

9           THE COURT:  One is I believe that.  And so you can

10  add me to the list of people who have faith that you are going

11  to get past this, make it right, and do something great with

12  your life.  I have faith because I have a very dear friend who

13  did just that.  He's a wonderful lawyer.  He had to explain to

14  the Board of Examiners when he was young the stupid mistakes

15  and crimes he committed.  Okay?

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  And the fact that he can be where he is

18  today is a testament.

19      There is someone else I know.  He's not as close to me but

20  he's a north star for you, and I encourage you to read his

21  book.  His name is Shon Hopwood.  Shon Hopwood -- have you

22  heard of him?

23          THE DEFENDANT:  No, ma'am.

24          THE COURT:  He's a law professor at Georgetown.  He

25  has worked on sentencing reform.  He represented his first

1  client while he was in prison, 12 years of prison for a series

2  of armed robberies that he committed when he was your age.  And

3  while he was in prison -- and if you hear him talk about it --

4  feeling very sorry for himself, he started to help fellow

5  inmates, and one of his cases went all the way to the Supreme

6  Court.  And there were lawyers on the outside who took his

7  great argument and ran with it, and those lawyers became his

8  sponsors, became the people that helped him become a lawyer and

9  then a law professor and now a real agent of change in

10  sentencing.

11       And you should read about him, and hopefully you'll get

12  some more juice to move you in that direction.

13       So those are just two people who I look to and say you can

14  be the third.

15            THE DEFENDANT:  Yes, ma'am.

16            THE COURT:  And I hope you do remember that and think

17  about that every day as you're moving toward your goal.

18            THE DEFENDANT:  Yes, ma'am.  I will.

19            THE COURT:  Okay.

20            THE DEFENDANT:  Thank you.

21            THE COURT:  All right.  Anything else, Mr. Johnson?

22            THE DEFENDANT:  Nothing else, Your Honor.

23            THE COURT:  Okay.

24            THE DEFENDANT:  Thank you for hearing me out, and I

25  thank everybody for coming and supporting me, and I know that

1    you'll do what you feel on your heart is the best for me.

2    Thank you so much, Your Honor.

3              THE COURT:  All right.  Thank you.

4              MR. RAGHAVAN:  Your Honor, the Court had asked the

5    government as to the amounts that were negotiated by each

6    individual defendant --

7              THE COURT:  Yes.

8              MR. RAGHAVAN:  -- in the stipulated plea agreements,

9    and in Mr. Johnson's case, at least $150,200 was negotiated

10   into accounts that he controlled.

11             THE COURT:  Okay.

12             MR. RAGHAVAN:  And in Mr. Beamon's case, at least

13   $124,800 was negotiated in the control -- accounts that

14   Mr. Beamon controlled.

15             THE COURT:  Based upon the agreed upon amounts?

16             MR. RAGHAVAN:  Based on the stipulated facts, yes,

17   Your Honor.

18             THE COURT:  Where did the 529 come from then in

19   Mr. Beamon's agreement?

20             MR. RAGHAVAN:  Your Honor, that was the total loss

21   amount within the entire conspiracy.

22             THE COURT:  Was there anybody else involved in the

23   offense?

24             MR. RAGHAVAN:  There were other unknown individuals

25   as well involved in the conspiracy, and based on all of the

1    amounts that were in the conspiracy, the government believes

2    that the total loss amount was approximately 529,000.

3              THE COURT:  So there were other co-conspirators that

4    make up the delta?

5              MR. RAGHAVAN:  Yes, Your Honor.  The government is

6    not aware of them, but those were the loss amounts as having

7    been negotiated and that the postal service was able to

8    determine.

9              THE COURT:  Okay.

10             MR. RAGHAVAN:  And just to clarify, Your Honor, the

11   government also wants to note that that was what was determined

12   to be foreseeable as well for both defendants that they

13   negotiated.  Thank you.

14        (Conference at the Bench.)

15        It is the policy of this Court that every guilty plea and

16   sentencing proceeding include a bench conference concerning

17   whether the defendant is or is not cooperating.

18        (Open court.)

19             THE COURT:  I have to tell you, in this case, given

20   the -- it's the evidence.  Every person here is evidence.  I'll

21   just say that, because you may not see yourselves as that, but

22   for a judge like me who bases the sentence on evidence, you're

23   just as much evidence as the Government's evidence that this

24   crime was so serious, it hurt so many people, it went on for so

25   long.  I credit all of that, but I also credit each and every

1  one of you here in Mr. Johnson's particular life story.  That

2  is all evidence, and I must weigh it all.

3       So I just have to disagree with you, Mr. Raghavan, that

4  the sufficient but not greater than necessary sentence must be

5  as high as 41 months in this case.

6       And that does not -- let me start with the 3553(a)

7  factors.  I must take into account the seriousness of this

8  offense.  It was brazen.  It went on so long, five months of

9  every day making the decision.

10      And you're right, Mr. Raghavan, it's a choice to go in,

11  steal Money Orders, alter the Money Orders, put them at orders

12  of magnitude greater in price, put other people's names on it,

13  take the money, put it into the account and spend it.  That's a

14  very, very, very serious, planned premeditated offense.

15      And if that were the only thing I were looking at, it

16  would likely be a higher sentence, Mr. Johnson, than even

17  41 months.  I might be at 51 or 61 months if that were my only

18  consideration, as is respect for the law.  When you,

19  Mr. Beamon, and the others were doing this, there was no

20  respect for the law because it was incredibly brazen.

21      As to deterrence, that's a bit more difficult.  In your

22  specific case, Mr. Johnson, you've been on pretrial release for

23  17 months.  You have had to face your family who, like you say,

24  you've -- they were counting on you.  You were counting on you,

25  and you blew a hole through that.

1      You're going to do some prison time.  When I look at all

2  of that -- and then you're going to be on supervised release,

3  I'll tell you right now, for five years.  And I'm going to be

4  here, too, and I'm going to be watching really carefully

5  because it's designed, actually, to help you make it right with

6  the victims and succeed.

7      But there is also going to be some conditions that are

8  going to be difficult and that's so that you don't forget where

9  you came from with this case.  All right?  I see that as all

10  the deterrence, specific deterrence you need, and you've

11  demonstrated to me in the last 17 months you have been

12  chastened and you have been deterred.

13      As to general deterrence, that is a complicated question,

14  and both the government and Mr. Wood make great point.  In my

15  view, it can be somewhat of a wash.  Right?  On the one hand,

16  yes, longer sentences deter others from wanting to spend that

17  much time in prison.  On the other hand, for an individual like

18  you, Mr. Johnson, any time of prison feels like you've been

19  dropped into a black hole.

20      And so for others who are in your situation, the length

21  that I'm going to give you is likely going to send the message

22  I don't ever want to make such a foolish and criminal mistake

23  again by following my, you know -- or not following but getting

24  into this with my good buddy and thinking that we can get one

25  over.  You know?

1           The need to avoid unwarranted disparity.  I sentenced

2      Mr. Beamon to a very lengthy sentence.  I have to tell you, I

3      was, in that regard, very persuaded by the government that

4      given the combination of multiple firearms, that -- some of

5      which were extremely dangerous -- there was an inference, I

6      think, beyond just possessing ten firearms that, you know, it's

7      a fair inference to say someone is likely not using them all

8      for himself or, you know, collecting guns, but likely

9      transacting in them.  And I thought that to be serious enough

10     where the government was correct in filing a separate offense

11     for Mr. Beamon.

12           And, frankly, I don't believe there was nearly as much

13     mitigation, much family support.

14           And what has impressed me, Mr. Johnson, about you is the

15     grit, the grit to gut it out, to get your degree when other

16     people would have said I'm not -- what's the point?  I now have

17     a federal felony conviction.  The grit to do it in an extremely

18     difficult era, and the grit to say I'm not going to let this

19     limit me.  And that's unusual.  I don't recall it in

20     Mr. Beamon's case, and I don't recall it in many.

21           So the sentence will be different, but I have to take into

22     account unwarranted disparity, not warranted disparity.  And in

23     this case, I do believe that the difference in sentence,

24     despite the fact that you and Mr. Beamon were pretty much in

25     this together, that's how I see at least the fraud offense is

1  you all were neck and neck on this one; but there's other

2  individual factors that make the sentence necessarily

3  different.

4      Finally, I must consider your individual history and

5  circumstances.  And all of the evidence that I see is that you

6  have the capability of a bright future.  You had a very

7  difficult past, and I commend you for continuing, and you're

8  going to continue it because I'm going to make sure of it when

9  you're on supervised release with your mental health treatment,

10  because that's going to give you the support and keep you

11  right-sized so you don't jump back into something like this.

12      You stay focused in a law abiding way so you can be an

13  example for your children, for your sisters, for my children.

14  We have got to change the way that young people come up in this

15  world, you're correct, and I do believe you have that ability.

16  Everything that I've heard -- and I looked as you were talking

17  about how hard you worked, and you have more jobs in your short

18  life in the presentence report than some people have in their

19  entire criminal careers.

20      I've seen individuals who come in who are double your age

21  being sentenced yet again for drug offenses or gun offenses or

22  fraud, and there is maybe one or two jobs that are listed.

23      That's not you.  I've counted one, two, three, four, five,

24  six.  And that's probably the only ones that you could remember

25  at the time, I'm sure.  Like you said, you've been working a

1    long time.  You need to put these gifts to better use, and I

2    believe you can and you will.

3         So based on the totality of the evidence, I do find a

4    prison sentence is warranted.  It will be 18 months custody of

5    the Bureau of Prisons and with self-surrender.  And with good

6    time, it will be less than that.  I can't tell you how much,

7    but once you are finished with that 18 months, you will be on

8    supervised release for five years.

9         And, Mr. Wood, let me ask you, have you reviewed the

10   standard and mandatory conditions of supervision with

11   Mr. Johnson?  They were in the presentence report.

12             MR. WOOD:  Yes, Your Honor.

13             THE COURT:  Do you have any questions or concerns

14   about my imposing the standard and mandatory conditions?

15             MR. WOOD:  No, Your Honor.

16             THE COURT:  Okay.

17        In addition to those, Mr. Johnson, you will complete

18   200 hours of community service in the five years that you are

19   on supervision.  That's a lot but it is designed to keep you

20   focused on giving back.  You can't -- and you're going to have

21   the restitution to pay, but I really do want this to be a

22   life-long commitment to the service of others.

23        So for the 200 hours that you're going to be doing on

24   community service, I would like them completed within the first

25   three years.  If you get them done sooner, pay your

1   restitution, you're doing well, I'll consider terminating your

2   supervision early, but those 200 hours need to be done.

3        In addition, you will pay the restitution back at $100 per

4   month beginning 30 days from your release.  So I'm not going to

5   make you part of the Inmate Financial Responsibility Program.

6        You are not to incur any new credit charges or open up

7   lines of credit without the approval from the probation office.

8   That's to make sure you stay financially healthy.  And if

9   you're doing well, you, through counsel, can always ask me to

10  modify that and take it away, but I want the probation office

11  to be involved in that in the beginning.

12       Likewise, you will provide to the probation officer access

13  to any requested financial information and authorize the

14  release to them of your financial information so they can help

15  keep a watch on your progress.

16       You'll participate in the mental health treatment program

17  and follow the instructions of that program.  In a perfect

18  world, if you're in Maryland and you can get back into

19  Insight -- from what I hear, you've benefited from it -- that

20  would be ideal.

21       Probation is recommending a substance abuse treatment

22  program.  I didn't see too much to support that.  So I'm not

23  inclined, Ms. Dasovic, unless you wish to be heard, to impose

24  that specific condition.  There's just some social use back in

25  the day but not anything that suggests I should be using the

1    probation resources in that regard.

2          MS. DASOVIC:  Well, Your Honor, I would recommend

3    that the condition be imposed just at the very least so we can

4    test the defendant.  And if he, you know, is tested and he

5    tests negative, he won't be made to go to treatment or anything

6    like that, but it does give the option that if he were at some

7    point to test positive, then we could send him to treatment

8    without having to get a modification.

9          THE COURT:  Okay.

10         So, Mr. Johnson, do you understand what Ms. Dasovic just

11   said?  That if you come home and you test positive, by imposing

12   this condition, that gives probation the discretion to put you

13   in a substance abuse program.  The record is clear I don't

14   think you need it now, and if you stay clean, you won't need to

15   be on it.

16         And, Mr. Wood, if you have trouble in that regard, you let

17   me know.

18         So with that, I will also specifically order that you are

19   tested, and if probation finds warranted, that you participate

20   in a substance abuse treatment program.

21         There will be no fine because I want every dollar to go to

22   the restitution in this case.

23         Are there any aspects of the sentence that I have failed

24   to address?

25         MR. WOOD:  No, Your Honor.  We would ask the Court

1   recommend Cumberland Federal Correctional Institution.

2            THE COURT:  Okay.  And I will do that.

3       And the sentence that I just announced, both in prison

4   term and in length of supervision and the conditions is the

5   same as to Count One and Count Two, to run concurrently with

6   each other.  Thank you, Mr. Ulander.

7       Did I also say special assessment to be paid while on

8   supervision?  $200 special assessment to be paid while on

9   supervision.

10      Anything I left out?  Anything else about the sentence?

11           MR. WOOD:  No, Your Honor.

12           THE COURT:  Okay.  And the formal entry of

13  restitution, Mr. Ulander, will you give me the full amount?

14           THE COURTROOM DEPUTY:  $272,087.19.

15           THE COURT:  Okay.  Formal entry of restitution in the

16  amount of $272,000 -- give it to me again.

17           THE COURTROOM DEPUTY:  $272,087.19.

18           THE COURT:  $272,087.19 is the formal entry of agreed

19  upon restitution.

20      Now, Mr. Johnson, what that means is you will be -- as a

21  condition of your criminal offense, you'll have to pay $100 per

22  month at least as a condition of supervision.  Once supervision

23  is over, you still have to pay the restitution.  It's going to

24  lodge itself as a civil judgment, and it will be with you for

25  years to come until you find a way to pay it back.

1    So my -- you know, I strongly urge you to work that into

2  your financial plan going forward until every dollar is paid

3  off.  Okay?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  All right.

6        Mr. Raghavan, are there any counts to dismiss?

7              MR. RAGHAVAN:  Yes, there are, Your Honor.  Counts 3,

8  8, 11, 12, 13, 18, and 20.

9              THE COURT:  Okay.  And those counts are dismissed.

10       Just so the parties know, there is a recent Fourth Circuit

11  case called United States vs. Soloff, which suggests it's best

12  practices for the Court to actually accept the plea agreement

13  that dismisses charges because in the event I didn't accept it,

14  Mr. Johnson, you could actually ask me under the rules to

15  withdraw.  But I am accepting the agreement, and I do accept

16  that the -- with respect to the dismissal of the charges.

17       Everything else has been non-binding with regard to the

18  agreement, but I do want the record to be clear in that

19  respect.  And so the charges are dismissed.

20       Two remaining matters of business.  Mr. Johnson, if you

21  are not satisfied with my sentence, I don't recall in your plea

22  agreement whether you've given up the right to appeal, so do

23  talk to Mr. Wood about that as quickly as possible because if

24  you want to appeal, you have to do so within 14 days of today.

25       Second is there is a new law called the Due Process

1    Protection Act.  This law tells me that I must order the

2    government to do its job under a case called *Brady vs. Maryland*

3    where the government must disclose all exculpatory information,

4    which is information that tends to show you are not guilty.

5         So let me just ask Mr. Raghavan.  Have you honored your

6    *Brady* obligations in this case?

7              MR. RAGHAVAN:  Yes, Your Honor.  The government has

8    honored the *Brady* obligations.

9              THE COURT:  Okay.  So then I will go ahead and enter

10   the due process order which memorializes that I have done my

11   part as well.

12        Okay.  All right, Mr. Ulander, anything I have forgotten?

13   Self surrender, great.

14        All right.  I have been given a self-surrender date of

15   June 7th.  So between now and then, Mr. Johnson, you should

16   receive your designation, and you will be ordered to report no

17   later than I think it's 2 p.m. on June 7th.  If between now and

18   then you do not receive that designation, do, through counsel,

19   get in touch with us because we can always modify it, but you

20   should be designated by then.  And that will just allow you to

21   self-report, which is a heck of a lot better than having to be

22   transported by the marshals.

23        Between now and then, you will still be on pretrial

24   supervision.  So same conditions will apply.  And keep doing

25   what you're doing, doing well.

1     I do wish you the best of luck, and I do hope that either

2  through counsel or directly you keep me in the loop as to how

3  you do.

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  It really does matter to me and to

6  everybody here that you are a success in however you define

7  that as long as you color within the lines of the law, and I

8  always appreciate hearing about how you are going to do that.

9     And even if you hit some snags along the way and bumps in

10 the road while you're on supervision, that's why we're here, to

11 help you get through them.  Okay?  So don't hesitate to tell

12 your attorney, your probation officer, and ask them to tell me

13 so that you get the assistance that your godfather talked

14 about, you know, young people need.

15    And we're not your parents, but we are involved in your

16 life and we care.  Okay?  So that's not just empty.  I mean

17 that.

18         THE DEFENDANT:  Thank you, Your Honor.

19         THE COURT:  All right.

20    All right, thank you all.

21         MR. WOOD:  Thank you, Your Honor.

22         MR. RAGHAVAN:  Thank you, Your Honor.

23         THE COURTROOM DEPUTY:  This Honorable Court now

24 stands adjourned.

25    (The proceedings were adjourned at 11:31 A.M.)

1          I, Marlene Kerr, FCRR, RPR, CRR, RMR, certify that the

2     foregoing is a correct transcript of the stenographic record of

3     proceedings in the above-entitled matter.

4

5                    Dated this 4th day of November, 2021.

6

7     _____
                                 /s/
                           Marlene Kerr
8                 Federal Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$1,000** [3] - 26:3, 26:13, 26:23
**$100** [2] - 52:3, 54:21
**$120,000** [2] - 30:1, 30:7
**$124,800** [1] - 45:13
**$150,000** [2] - 25:16, 30:10
**$150,200** [1] - 45:9
**$200** [1] - 54:8
**$272,000** [4] - 31:1, 31:5, 31:13, 54:16
**$272,087.19** [3] - 54:14, 54:17, 54:18
**$529,000** [2] - 30:17, 31:15
**$800** [2] - 26:3, 26:23

## /

**/s** [1] - 58:6

## 1

**1** [1] - 26:12
**10:00** [1] - 1:10
**11** [3] - 27:15, 55:8
**11:31** [1] - 57:25
**12** [3] - 27:15, 44:1, 55:8
**120,000** [1] - 30:6
**13** [1] - 55:8
**14** [1] - 55:24
**144** [1] - 26:2
**15** [1] - 1:10
**16th** [2] - 23:18, 23:19
**17** [4] - 12:3, 35:15, 47:23, 48:11
**18** [7] - 33:9, 38:14, 38:18, 38:24, 51:4, 51:7, 55:8
**188** [1] - 25:25

## 2

**2** [1] - 56:17
**20** [1] - 55:8
**200** [4] - 1:24, 51:18, 51:23, 52:2
**2019** [1] - 25:25
**202** [1] - 1:18
**2020** [1] - 23:23
**2021** [2] - 1:10, 58:5
**20737** [1] - 1:19
**20770** [2] - 1:15, 1:25
**22** [2] - 7:8, 15:4
**23** [1] - 20:1

**24** [3] - 33:9, 38:17, 38:24
**25** [1] - 40:12

## 3

**3** [1] - 55:7
**30** [1] - 52:4
**301** [3] - 1:15, 1:19, 1:25
**344-3499** [1] - 1:25
**344-4031** [1] - 1:15
**3553(a** [6] - 6:5, 25:3, 33:19, 35:5, 36:24, 47:6

## 4

**40** [1] - 41:4
**41** [7] - 24:15, 28:17, 37:1, 38:12, 38:24, 47:5, 47:17
**41-month** [1] - 25:2
**47** [1] - 14:17
**4th** [1] - 58:5

## 5

**51** [2] - 38:17, 47:17
**51-month** [1] - 28:17
**529** [1] - 45:18
**529,000** [1] - 46:2

## 6

**61** [1] - 47:17
**6406** [1] - 1:14
**6500** [1] - 1:24
**6801** [1] - 1:18
**699-0764** [1] - 1:19

## 7

**7th** [2] - 56:15, 56:17

## 8

**8** [1] - 55:8
**800** [1] - 1:14
**8:19-cr-0570-PX** [1] - 1:4

## A

**A.M** [1] - 1:10, 57:25
**abide** [1] - 38:5
**abiding** [1] - 50:12
**abilities** [3] - 25:9, 33:1, 33:24

**ability** [1] - 50:15
**able** [13] - 10:19, 11:17, 11:21, 11:22, 11:25, 13:23, 18:18, 27:6, 33:16, 35:2, 42:24, 46:7
**above-entitled** [1] - 58:3
**absolute** [1] - 19:12
**abuse** [4] - 18:23, 52:21, 53:13, 53:20
**abusive** [1] - 15:6
**accept** [3] - 55:12, 55:13, 55:15
**accepted** [2] - 15:17, 26:24
**accepting** [1] - 55:15
**access** [2] - 15:15, 52:12
**Accokeek** [1] - 14:15
**accomplishing** [1] - 12:24
**accordingly** [2] - 33:8, 33:18
**account** [5] - 34:14, 36:18, 47:7, 47:13, 49:22
**accountability** [1] - 42:19
**accountable** [2] - 9:6, 9:9
**accounting** [1] - 28:15
**accounts** [9] - 25:17, 26:5, 27:12, 27:13, 27:19, 30:8, 30:10, 45:10, 45:13
**accurate** [1] - 5:9
**accurately** [1] - 6:16
**act** [3] - 20:3, 28:9, 33:11
**Act** [1] - 56:1
**actions** [1] - 17:1
**acts** [3] - 26:19, 29:1, 29:22
**add** [2] - 24:12, 43:10
**addicted** [1] - 15:3
**addition** [2] - 51:17, 52:3
**additional** [1] - 4:14
**additions** [2] - 3:12, 3:20
**address** [4] - 19:10, 23:15, 35:24, 53:24
**adequate** [1] - 33:21
**adequately** [1] - 36:9
**adjourned** [2] - 57:24, 57:25
**adjust** [1] - 7:6
**adjustment** [3] - 7:5, 7:12, 28:3

**adopt** [3] - 3:18, 4:2, 7:15
**adults** [2] - 17:5, 20:2
**advantage** [1] - 20:11
**advisory** [1] - 6:22
**afford** [1] - 42:12
**age** [3] - 41:8, 44:2, 50:20
**agent** [1] - 44:9
**aggravated** [1] - 32:15
**agree** [4] - 5:15, 5:19, 31:22, 33:25
**agreed** [6] - 30:17, 30:23, 31:10, 37:11, 45:15, 54:18
**agreement** [9] - 30:14, 30:18, 30:19, 31:14, 45:19, 55:12, 55:15, 55:18, 55:22
**agreements** [1] - 45:8
**agrees** [1] - 31:15
**ahead** [3] - 39:13, 40:18, 56:9
**Aided** [1] - 1:22
**ailing** [1] - 14:1
**alcohol** [1] - 18:23
**allow** [2] - 18:15, 56:20
**allowed** [1] - 18:9
**alluded** [1] - 18:3
**almost** [1] - 22:9
**alone** [1] - 19:8
**ALSO** [1] - 1:20
**alter** [1] - 47:11
**altered** [5] - 26:2, 26:3, 26:12, 26:13
**ambitious** [2] - 21:9, 21:24
**AMERICA** [1] - 1:3
**America** [1] - 39:18
**ammunition** [1] - 29:17
**amount** [12] - 30:3, 30:23, 31:10, 31:12, 31:17, 31:22, 34:25, 45:21, 46:2, 54:13, 54:16
**amounts** [5] - 26:23, 45:5, 45:15, 46:1, 46:6
**anecdotal** [1] - 38:15
**anesthesia** [1] - 11:23
**anesthesiologist** [1] - 9:17
**announced** [1] - 54:3
**answer** [4] - 21:20, 22:1, 40:7, 40:8
**answers** [1] - 20:20
**anxiety** [2] - 22:5, 22:23

**apologize** [5] - 24:22, 29:25, 30:16, 31:19, 39:18
**appeal** [2] - 55:22, 55:24
**apply** [2] - 32:24, 56:24
**appreciate** [7] - 2:20, 13:16, 17:16, 17:25, 22:2, 42:21, 57:8
**appropriate** [4] - 4:22, 24:17, 25:3, 27:5, 36:22
**approval** [1] - 52:7
**APRIL** [1] - 1:10
**AR-15** [2] - 29:4, 29:5
**areas** [1] - 14:23
**argue** [8] - 28:19, 28:24, 29:21, 36:1, 36:2, 36:16, 36:25, 38:16
**argument** [3] - 32:2, 32:8, 44:7
**argumentative** [1] - 35:12
**armed** [1] - 44:2
**arrest** [1] - 18:15
**arrows** [2] - 34:1, 35:6
**aspects** [1] - 53:23
**assessment** [2] - 54:7, 54:8
**assistance** [1] - 57:13
**assuring** [1] - 33:21
**attempting** [1] - 25:24
**attitude** [4] - 12:14, 12:15, 12:17, 12:21
**ATTORNEY** [1] - 1:13
**attorney** [1] - 57:12
**authorize** [1] - 52:13
**AVENUE** [1] - 1:18
**avoid** [2] - 17:3, 49:1
**aware** [1] - 46:6

## B

**background** [3] - 18:24, 19:2, 21:6
**bad** [9] - 12:14, 12:15, 12:21, 12:22, 20:17, 33:13, 37:23, 38:8, 38:9
**bank** [7] - 25:17, 26:5, 27:12, 27:13, 27:19, 30:8, 30:10
**based** [9] - 4:8, 4:9, 4:23, 25:3, 28:19, 45:15, 45:16, 45:25, 51:3
**bases** [1] - 46:22
**Beamon** [20] - 19:21,

20:23, 27:2, 27:23,
27:24, 28:1, 28:11,
28:20, 29:3, 29:16,
29:24, 30:6, 30:7,
30:21, 31:10, 45:14,
47:19, 49:2, 49:11,
49:24
**Beamon's** [6] - 28:10,
30:13, 31:11, 45:12,
45:19, 49:20
**beautiful** [1] - 9:22
**became** [2] - 44:7,
44:8
**become** [2] - 43:2,
44:8
**bedroom** [1] - 26:11
**BEFORE** [1] - 1:9
**beg** [1] - 17:8
**beginning** [2] - 52:4,
52:11
**behind** [2] - 21:24,
42:5
**believes** [6] - 5:8,
5:10, 25:2, 28:7,
28:15, 46:1
**Bench** [1] - 46:14
**bench** [1] - 46:16
**benefit** [1] - 35:20
**benefited** [1] - 52:19
**best** [7] - 10:12, 15:16,
15:22, 40:13, 45:1,
55:11, 57:1
**better** [9] - 20:18,
24:2, 33:2, 39:22,
41:23, 42:9, 51:1,
56:21
**between** [8] - 9:13,
20:22, 25:25, 27:25,
31:7, 56:15, 56:17,
56:23
**beyond** [1] - 49:6
**big** [4] - 16:6, 21:23,
23:21, 42:18
**binding** [1] - 55:17
**biology** [3] - 18:11,
19:19, 32:21
**bit** [4] - 14:19, 15:6,
15:15, 47:21
**black** [1] - 48:19
**blank** [2] - 25:25, 27:3
**blew** [1] - 47:25
**Board** [1] - 43:14
**bodes** [1] - 18:19
**book** [1] - 43:21
**Brady** [3] - 56:2, 56:6,
56:8
**brain** [1] - 40:12
**brazen** [2] - 47:8,
47:20
**brief** [1] - 3:1

**Brief** [2] - 2:8, 3:5
**bright** [1] - 50:6
**bringing** [1] - 12:20
**broken** [2] - 20:9,
20:11
**buddy** [1] - 48:24
**bump** [2] - 35:17, 36:2
**bumps** [1] - 57:9
**burden** [1] - 41:13
**Bureau** [1] - 51:5
**business** [3] - 16:10,
29:7, 55:20
**butt** [1] - 41:3
**BY** [2] - 1:14, 1:18

---

## C

**calculation** [1] - 6:20
**calibrate** [1] - 34:17
**Campbell** [8] - 7:21,
8:2, 8:5, 8:6, 9:23,
11:9, 12:2, 13:15
**CAMPBELL** [18] -
7:23, 8:2, 8:5, 8:8,
8:11, 8:14, 8:18,
9:24, 10:2, 10:9,
11:11, 12:5, 12:9,
13:1, 13:17, 13:20,
14:2, 14:5
**campus** [2] - 42:11,
42:14
**cannot** [1] - 17:10
**capability** [1] - 50:6
**capture** [1] - 6:16
**captured** [1] - 36:9
**cards** [1] - 27:19
**care** [5] - 5:18, 9:9,
9:10, 13:13, 57:16
**careers** [1] - 50:19
**carefully** [2] - 6:11,
48:4
**Carolina** [6] - 4:10,
10:19, 18:16, 26:9,
26:18, 26:20
**Case** [1] - 1:4
**case** [36] - 2:10, 5:2,
5:9, 6:4, 6:13, 7:1,
18:1, 18:15, 23:3,
24:11, 25:3, 27:10,
28:12, 29:15, 33:7,
33:10, 34:24, 35:7,
36:1, 36:13, 36:22,
37:1, 37:6, 38:6,
45:9, 45:12, 46:19,
47:5, 47:22, 48:9,
49:20, 49:23, 53:22,
55:11, 56:2, 56:6
**cases** [2] - 29:9, 44:5
**casting** [1] - 41:24
**categories** [1] - 7:6

**category** [2] - 4:23,
19:16
**Category** [4] - 4:23,
5:8, 7:7, 7:9
**caused** [1] - 33:4
**Center** [1] - 22:13
**certain** [3] - 16:17,
16:18, 41:8
**certainly** [7] - 19:4,
20:17, 21:4, 23:8,
23:11, 35:17, 39:1
**certify** [1] - 58:1
**challenges** [1] - 14:24
**chance** [1] - 21:22
**Chanel** [1] - 42:1
**change** [6] - 6:19,
12:15, 40:2, 44:9,
50:14
**changed** [1] - 12:15
**changes** [3] - 3:12,
3:21, 12:6
**character** [6] - 4:18,
7:17, 14:8, 14:20,
17:6, 19:20
**characteristics** [2] -
36:8, 36:18
**charge** [2] - 4:9, 4:17
**charges** [4] - 52:6,
55:13, 55:16, 55:19
**Charles** [1] - 4:24
**chart** [1] - 6:21
**chastened** [1] - 48:12
**chemistry** [2] - 18:12,
32:21
**CHERRYWOOD** [1] -
1:24
**child** [5] - 8:19, 12:10,
14:22, 15:4, 19:17
**children** [3] - 16:13,
50:13
**choice** [17] - 16:15,
16:19, 25:8, 25:9,
32:2, 32:3, 33:3,
37:21, 37:23, 38:3,
38:4, 38:5, 38:8,
38:9, 47:10
**choices** [7] - 16:17,
17:4, 33:2, 37:22,
38:7, 38:9
**choose** [1] - 33:23
**chose** [3] - 32:23,
33:2, 37:25
**Circuit** [1] - 55:10
**circumstance** [2] -
6:11, 25:6
**circumstances** [1] -
50:5
**civil** [1] - 54:24
**clarify** [1] - 46:10
**clean** [1] - 53:14

**clear** [7] - 7:25, 24:19,
29:2, 32:5, 35:11,
53:13, 55:18
**client** [4] - 4:7, 23:14,
37:18, 44:1
**client's** [1] - 7:21
**close** [2] - 10:12,
43:19
**closer** [1] - 8:3
**co** [6] - 25:13, 25:19,
26:22, 27:2, 42:2,
46:3
**co-conspirator** [1] -
27:2
**co-conspirators** [4] -
25:13, 25:19, 26:22,
46:3
**co-defendant** [1] -
42:2
**codes** [1] - 26:24
**collar** [1] - 23:10
**collecting** [1] - 49:8
**college** [23] - 8:21,
8:23, 8:24, 10:11,
11:13, 11:14, 15:17,
15:25, 16:2, 16:6,
18:10, 26:10, 32:19,
32:20, 33:16, 38:4,
38:5, 41:2, 41:3,
41:4, 41:19, 41:21,
42:13
**color** [1] - 57:7
**combination** [1] - 49:4
**coming** [3] - 11:3,
16:16, 44:25
**commend** [1] - 50:7
**commit** [4] - 28:9,
32:25, 33:11, 41:1
**commitment** [1] -
51:22
**committed** [9] - 5:13,
12:25, 25:18, 32:15,
32:19, 38:16, 38:19,
43:15, 44:2
**committing** [4] - 6:3,
26:19, 28:25
**community** [6] - 17:3,
23:8, 23:20, 38:15,
51:18, 51:24
**compare** [1] - 28:12
**complete** [2] - 18:16,
51:17
**completed** [2] - 18:11,
51:24
**completely** [1] - 23:24
**complicated** [1] -
48:13
**Computer** [1] - 1:22
**Computer-Aided** [1] -
1:22

**concerning** [1] - 46:16
**concerns** [1] - 51:13
**concurrently** [2] - 7:4,
54:5
**condition** [5] - 52:24,
53:3, 53:12, 54:21,
54:22
**conditions** [8] - 34:5,
34:18, 38:6, 48:7,
51:10, 51:14, 54:4,
56:24
**conduct** [6] - 4:14,
25:9, 27:24, 28:20,
33:3, 33:5
**conducting** [2] -
11:15, 13:13
**Conference** [1] -
46:14
**conference** [1] - 46:16
**conscious** [1] - 33:3
**consecutively** [1] -
7:4
**consequence** [1] -
43:3
**consequences** [1] -
12:19
**consider** [5] - 6:5,
23:13, 36:7, 50:4,
52:1
**consideration** [2] -
17:12, 47:18
**considered** [1] - 24:11
**considering** [1] -
24:20
**conspiracy** [8] -
19:21, 26:8, 29:23,
32:3, 33:15, 45:21,
45:25, 46:1
**conspirator** [1] - 27:2
**conspirators** [4] -
25:13, 25:19, 26:22,
46:3
**contact** [1] - 8:23
**contemplated** [1] -
35:5
**context** [2] - 26:16,
38:8
**continually** [1] - 21:16
**continue** [2] - 12:1,
50:8
**continued** [3] - 13:4,
13:5, 24:2
**continuing** [3] - 22:7,
23:25, 50:7
**contrast** [1] - 30:9
**control** [1] - 45:13
**controlled** [5] - 25:17,
30:9, 30:10, 45:10,
45:14
**conviction** [4] - 19:1,

19:6, 19:8, 49:17
**cooperating** [1] -
46:17
**correct** [7] - 5:3,
29:13, 29:14, 37:8,
49:10, 50:15, 58:2
**Correctional** [1] - 54:1
**corrections** [2] - 3:12,
3:21
**Counsel** [1] - 7:9
**counsel** [6] - 3:8,
28:10, 32:18, 52:9,
56:18, 57:2
**counseling** [1] - 23:25
**Count** [2] - 54:5
**counted** [1] - 50:23
**counting** [3] - 39:20,
47:24
**counts** [3] - 55:6,
55:7, 55:9
**County** [1] - 4:24
**couple** - 37:19,
41:23
**course** [2] - 9:1, 35:16
**coursework** [2] -
18:11, 18:16
**court** [4] - 7:2, 18:21,
46:18
**COURT** [118] - 1:1,
1:24, 2:6, 2:9, 2:17,
2:23, 3:3, 3:6, 3:11,
3:15, 3:18, 3:24, 4:5,
5:1, 5:5, 5:15, 5:23,
6:6, 7:11, 7:14, 7:24,
9:23, 9:25, 10:4,
10:22, 11:2, 11:7,
12:2, 12:6, 12:23,
13:15, 13:18, 13:25,
14:3, 14:6, 14:9,
14:12, 17:15, 17:18,
17:21, 17:23, 19:10,
20:22, 21:1, 22:2,
22:10, 22:12, 22:14,
22:16, 22:19, 22:21,
23:21, 24:6, 24:8,
24:18, 24:25, 27:21,
29:2, 29:7, 29:12,
30:2, 30:11, 30:13,
30:17, 30:22, 30:25,
31:3, 31:6, 31:9,
31:14, 31:18, 31:21,
31:25, 33:25, 34:9,
35:10, 37:2, 37:7,
37:10, 37:16, 39:3,
39:13, 39:15, 40:6,
40:16, 40:23, 41:22,
42:8, 42:21, 43:6,
43:9, 43:17, 43:24,
44:16, 44:19, 44:21,
44:23, 45:3, 45:7,

45:11, 45:15, 45:18,
45:22, 46:3, 46:9,
46:19, 51:13, 51:16,
53:9, 54:2, 54:12,
54:15, 54:18, 55:5,
55:9, 56:9, 57:5,
57:19
**Court** [34] - 2:2, 2:4,
6:5, 8:17, 8:18, 12:8,
14:19, 17:9, 18:1,
18:15, 21:17, 23:13,
23:15, 23:16, 24:10,
26:16, 31:12, 32:7,
32:18, 33:1, 35:5,
35:6, 36:24, 37:4,
38:13, 38:21, 38:25,
44:6, 45:4, 46:15,
53:25, 55:12, 57:23,
58:7
**Court's** [2] - 34:2, 35:6
**COURTROOM** [4] -
2:3, 54:14, 54:17,
57:23
**COVID** [2] - 13:11,
13:12
**credit** [4] - 46:25,
52:6, 52:7
**crime** [4] - 32:20,
38:16, 38:20, 46:24
**crimes** [13] - 12:25,
27:10, 28:9, 28:25,
32:4, 32:11, 32:14,
32:25, 40:23, 40:24,
41:1, 43:15
**Criminal** [3] - 5:8, 7:7,
7:8
**criminal** [25] - 3:16,
3:25, 4:8, 4:16, 4:22,
5:25, 6:8, 6:11, 6:14,
7:6, 23:10, 25:9,
26:8, 26:19, 32:3,
32:6, 32:9, 32:10,
33:3, 33:4, 33:15,
36:20, 48:22, 50:19,
54:21
**CRR** [2] - 1:23, 58:1
**culpable** [1] - 28:8
**Cumberland** [1] - 54:1
**current** [1] - 24:15
**custody** [1] - 51:4

### D

**dad** [4] - 10:17, 15:22
**danger** [1] - 6:16
**dangerous** [1] - 49:5
**DASOVIC** [3] - 4:4,
7:13, 53:2
**Dasovic** [5] - 1:20,
3:25, 7:12, 52:23,

53:10
**date** [2] - 13:2, 56:14
**Dated** [1] - 58:5
**dates** [1] - 26:23
**Davidsonville** -
26:14, 26:17
**days** [2] - 52:4, 55:24
**deal** [2] - 22:6, 22:7
**dear** [1] - 43:12
**debate** [2] - 38:18,
38:19
**debit** [1] - 27:19
**debt** [2] - 11:19, 11:25
**decade** [1] - 34:20
**decide** [1] - 37:14
**decision** [2] - 12:14,
47:9
**decisions** [1] - 40:13
**dedication** [1] - 32:17
**Defendant** [1] - 1:7
**defendant** [28] - 5:12,
25:12, 25:15, 25:18,
25:20, 25:24, 25:25,
26:3, 26:18, 26:22,
27:2, 32:12, 32:14,
32:19, 32:23, 33:1,
33:4, 33:9, 33:11,
33:14, 33:23, 35:1,
36:8, 36:11, 42:2,
45:6, 46:17, 53:4
**DEFENDANT** [27] -
1:16, 3:10, 22:13,
22:15, 22:18, 22:20,
23:18, 39:11, 39:14,
39:17, 40:15, 40:19,
40:25, 42:7, 42:10,
42:24, 43:8, 43:16,
43:23, 44:15, 44:18,
44:20, 44:22, 44:24,
55:4, 57:4, 57:18
**defendant's** [8] - 5:25,
25:8, 26:7, 26:11,
27:18, 32:2, 32:6,
36:18
**defendants** [12] -
20:7, 27:22, 28:3,
28:8, 28:24, 29:22,
31:22, 32:9, 35:22,
46:12
**defense** [3] - 7:18,
28:10, 32:18
**define** [1] - 57:6
**definitely** [1] - 30:3
**degree** [4] - 11:24,
13:2, 18:11, 49:15
**degrees** [1] - 20:3
**Deja** [1] - 10:14
**delineated** [1] - 25:11
**delta** [1] - 46:4
**demonstrate** [1] -

34:12
**demonstrated** [2] -
36:11, 48:11
**depart** [1] - 6:25
**departed** [1] - 24:19
**Department** [1] - 1:20
**departure** [5] - 3:16,
6:25, 24:18, 24:23,
25:2
**departures** [2] - 6:8,
6:9
**deposit** [1] - 27:18
**deposited** [1] - 27:12
**depressed** [1] - 16:24
**depression** [2] - 22:6,
22:6
**DEPUTY** [4] - 2:3,
54:14, 54:17, 57:23
**designated** [1] - 56:20
**designation** [2] -
56:16, 56:18
**designed** [2] - 48:5,
51:19
**despite** [3] - 18:7,
18:17, 49:24
**deter** [2] - 39:2, 48:16
**determine** [1] - 46:8
**determined** [1] - 46:11
**determining** [1] - 6:5
**deterred** [1] - 48:12
**deterrence** [17] - 23:9,
33:21, 33:22, 35:9,
35:10, 35:14, 35:21,
38:11, 38:13, 38:14,
38:20, 38:23, 38:24,
47:21, 48:10, 48:13
**deterrent** [1] - 23:12
**developed** [1] - 9:7
**difference** [2] - 28:16,
49:23
**different** [9] - 6:12,
14:23, 20:8, 27:24,
29:7, 29:13, 29:15,
49:21, 50:3
**difficult** [8] - 17:25,
18:2, 20:4, 23:2,
47:21, 48:8, 49:18,
50:7
**direction** [2] - 38:1,
44:12
**directly** [1] - 57:2
**disagree** [1] - 47:3
**disappoint** [1] - 13:21
**disappointment** [2] -
9:1, 9:18
**disclose** [1] - 56:3
**discouraged** [1] -
12:24
**discretion** [1] - 53:12
**discuss** [1] - 24:13

**discussed** [1] - 27:1
**dismiss** [1] - 55:6
**dismissal** [1] - 55:16
**dismissed** [2] - 55:9,
55:19
**dismisses** [1] - 55:13
**disparity** [6] - 27:23,
28:6, 28:17, 49:1,
49:22
**distanced** [1] - 2:19
**DISTRICT** [3] - 1:1,
1:1, 1:9
**District** [2] - 2:3, 2:4
**DIVISION** [1] - 1:2
**Docket** [1] - 2:12
**dollar** [2] - 53:21, 55:2
**dollars** [1] - 25:14
**done** [18] - 4:1, 11:20,
17:9, 17:10, 17:12,
20:10, 21:6, 23:23,
35:15, 36:3, 38:2,
41:14, 41:17, 42:19,
51:25, 52:2, 56:10
**dorm** [1] - 42:13
**double** [1] - 50:20
**doubt** [1] - 35:18
**Douglas** [1] - 2:15
**DOUGLAS** [1] - 1:18
**down** [3] - 18:16, 33:8,
34:16
**downward** [9] - 3:16,
6:8, 7:6, 24:16,
24:23, 25:1, 33:18,
35:8, 36:10
**drags** [1] - 34:16
**drinking** [1] - 8:25
**driving** [4] - 4:8, 4:12,
5:11, 5:16
**dropped** [1] - 48:19
**dropping** [1] - 13:4
**drug** [2] - 15:3, 50:21
**drugs** [3] - 8:25, 18:6,
18:23
**Due** [1] - 55:25
**due** [1] - 56:10
**during** [2] - 16:2,
37:24

### E

**early** [1] - 52:2
**easier** [2] - 10:6, 10:7
**easy** [5] - 15:4, 15:19,
15:23, 17:6, 18:12
**effect** [1] - 29:23
**egregiousness** [1] -
32:11
**either** [5] - 12:24,
26:3, 26:23, 35:19,

57:1
**element** [1] - 34:16
**employee** [1] - 25:23
**empty** [1] - 57:16
**encased** [1] - 10:6
**encourage** [2] - 35:22, 43:20
**encouraged** [1] - 6:9
**end** [6] - 6:22, 24:15, 28:23, 31:21, 36:16, 36:22
**ended** [1] - 4:11
**enforcement** [3] - 26:9, 26:12, 29:19
**engage** [3] - 19:21, 32:3, 33:3
**engaging** [1] - 33:4
**English** [1] - 19:18
**ensure** [4] - 27:4, 28:16, 35:2, 36:23
**ensuring** [2] - 27:7, 27:9
**enter** [2] - 32:3, 56:9
**entire** [2] - 45:21, 50:19
**entitled** [3] - 28:2, 28:3, 58:3
**entry** [3] - 54:12, 54:15, 54:18
**equally** [1] - 28:8
**era** [1] - 49:18
**erased** [1] - 19:2
**especially** [2] - 9:21, 29:15
**ESQUIRE** [2] - 1:14, 1:18
**essentially** [1] - 27:3
**ethic** [2] - 21:17, 21:19
**event** [2] - 23:10, 55:13
**evidence** [12] - 26:7, 26:8, 28:11, 28:13, 46:20, 46:22, 46:23, 47:2, 50:5, 51:3
**exact** [1] - 13:2
**Examiners** [1] - 43:14
**example** [1] - 50:13
**exculpatory** [1] - 56:3
**excuses** [2] - 16:13, 17:7
**execute** [1] - 33:14
**expect** [2] - 2:23, 8:22
**expenses** [1] - 42:11
**explain** [2] - 40:9, 43:13
**expound** [1] - 14:23
**extremely** [5] - 19:17, 32:10, 32:21, 49:5, 49:17
**eye** [1] - 12:8

**eyes** [1] - 12:24

## F

**face** [1] - 47:23
**fact** [12] - 16:6, 18:4, 18:17, 28:19, 32:19, 34:21, 36:19, 36:20, 38:20, 38:23, 43:17, 49:24
**factor** [2] - 35:10, 35:14
**factors** [6] - 6:5, 25:4, 35:5, 36:24, 47:7, 50:2
**Facts** [1] - 30:5
**facts** [3] - 25:12, 27:14, 45:16
**failed** [1] - 53:23
**failure** [3] - 4:9, 4:10, 4:19
**fair** [7] - 7:5, 12:4, 23:25, 29:12, 29:15, 31:9, 49:7
**faith** [2] - 43:10, 43:12
**family** [5] - 2:21, 39:19, 39:22, 47:23, 49:13
**far** [8] - 9:12, 11:22, 12:13, 12:14, 12:21, 13:6, 13:7, 15:16
**fast** [1] - 34:6
**faster** [1] - 34:7
**father** [6] - 11:1, 14:24, 15:3, 18:5, 41:10
**fault** [1] - 18:6
**favor** [1] - 9:23
**FCRR** [2] - 1:23, 58:1
**fear** [1] - 12:18
**February** [1] - 23:23
**federal** [1] - 49:17
**Federal** [2] - 54:1, 58:7
**FEDERAL** [1] - 1:24
**feet** [1] - 10:7
**fell** [1] - 20:15
**fellow** [1] - 44:4
**felonies** [1] - 40:24
**felony** [1] - 49:17
**felt** [1] - 41:7
**few** [3] - 6:9, 24:12, 24:24
**fields** [1] - 19:4
**fight** [1] - 41:12
**figure** [4] - 4:2, 23:2, 37:11, 38:23
**figures** [1] - 33:17
**filing** [1] - 49:10

**finally** [1] - 50:4
**financial** [8] - 26:4, 26:25, 27:6, 33:6, 33:17, 52:13, 52:14, 55:2
**Financial** [1] - 52:5
**financially** [2] - 21:10, 52:8
**fine** [2] - 7:20, 53:21
**finish** [1] - 38:3
**finished** [4] - 11:14, 11:24, 13:2, 51:7
**firearm** [2] - 29:19, 29:20
**firearms** [5] - 28:21, 29:3, 29:16, 49:4, 49:6
**first** [10] - 3:24, 5:25, 7:20, 10:15, 25:6, 28:5, 32:9, 39:17, 43:25, 51:24
**five** [11] - 20:16, 28:22, 32:12, 34:20, 34:24, 37:24, 47:8, 48:3, 50:23, 51:8, 51:18
**five-month** [2] - 32:12, 37:24
**focus** [2] - 18:18, 25:4
**focused** [2] - 50:12, 51:20
**follow** [1] - 52:17
**following** [2] - 48:23
**foolish** [1] - 48:22
**FOR** [3] - 1:1, 1:12, 1:16
**foregoing** [1] - 58:2
**foreseeable** [1] - 46:12
**forfeiture** [2] - 37:5, 37:8
**forget** [1] - 48:8
**forgotten** [1] - 56:12
**formal** [4] - 3:15, 54:12, 54:15, 54:18
**forming** [1] - 40:12
**forth** [1] - 27:14
**forward** [6] - 3:9, 7:22, 13:5, 14:10, 21:5, 55:2
**four** [3] - 8:14, 26:13, 50:23
**Fourth** [1] - 55:10
**frankly** [1] - 49:12
**fraud** [3] - 32:15, 49:25, 50:22
**free** [3] - 10:5, 10:7, 10:23
**freshman** [1] - 41:4
**friend** [2] - 10:13,

43:12
**friends** [7] - 2:21, 9:20, 11:12, 12:1, 16:16, 20:24, 39:19
**front** [2] - 34:19, 43:7
**full** [3] - 8:1, 42:18, 54:13
**future** [4] - 18:20, 21:18, 35:22, 50:6

## G

**gain** [1] - 33:17
**general** [4] - 35:9, 35:10, 35:14, 48:13
**generally** [2] - 8:7, 38:12
**Georgetown** [1] - 43:24
**ghost** [2] - 29:4
**gifts** [3] - 25:9, 33:24, 51:1
**girl** [1] - 10:2
**girlfriend** [3] - 9:22, 10:14, 10:15
**given** [9] - 4:7, 4:25, 6:17, 15:25, 21:21, 46:19, 49:4, 55:22, 56:14
**glad** [1] - 23:24
**goal** [1] - 44:17
**goals** [3] - 39:21, 40:1
**god** [1] - 11:5
**godfather** [3] - 10:17, 13:6, 57:13
**gosh** [1] - 34:19
**government** [44] - 2:9, 3:22, 5:8, 5:9, 5:24, 6:1, 6:2, 23:21, 24:10, 24:12, 24:14, 24:23, 25:2, 25:4, 25:12, 25:22, 28:4, 28:7, 28:14, 28:19, 28:24, 29:18, 29:21, 32:4, 34:23, 35:3, 36:2, 36:5, 36:16, 36:24, 37:3, 37:20, 38:11, 38:22, 45:5, 46:1, 46:5, 46:11, 48:14, 49:3, 49:10, 56:2, 56:3, 56:7
**government's** [2] - 24:11, 32:2
**Government's** [1] - 46:23
**grace** [1] - 5:16
**graduate** [2] - 18:9, 38:5
**graduated** [2] - 16:6, 19:5

**graduation** [1] - 23:16
**grandma** [1] - 43:4
**grandma's** [1] - 41:13
**grandmother** [9] - 9:3, 10:18, 13:21, 14:25, 15:12, 15:15, 15:18, 16:4, 18:9
**granting** [2] - 6:19, 6:24
**great** [8] - 7:14, 23:11, 37:16, 43:2, 43:11, 44:7, 48:14, 56:13
**greater** [4] - 34:2, 34:13, 34:15, 47:4, 47:12
**GREENBELT** [3] - 1:10, 1:15, 1:25
**grew** [1] - 20:24
**grit** [4] - 49:15, 49:17, 49:18
**group** [2] - 22:14, 22:16
**grow** [1] - 18:4
**growing** [1] - 18:4
**guess** [12] - 8:14, 8:21, 8:22, 9:7, 9:10, 11:15, 11:17, 11:19, 12:11, 12:18, 13:3, 13:20
**guidance** [1] - 16:18
**guide** [1] - 20:12
**guideline** [6] - 6:20, 6:21, 6:22, 24:15
**guidelines** [6] - 6:10, 28:4, 32:13, 33:22, 36:17, 36:22
**guilty** [4] - 4:12, 29:8, 46:15, 56:14
**gun** [3] - 29:4, 50:21
**guns** [2] - 27:25, 49:8
**gut** [1] - 49:15
**guys** [1] - 11:14

## H

**half** [4] - 22:9, 25:13, 31:9, 34:19
**Hamill** [1] - 3:2
**hand** [2] - 48:15, 48:17
**handgun** [1] - 4:24
**hanging** [1] - 18:17
**happy** [1] - 13:24
**hard** [5] - 4:16, 19:18, 32:21, 38:23, 50:17
**harder** [2] - 41:6, 41:20
**harm** [1] - 33:4
**Harwood** [2] - 26:15, 26:17

**head** [4] - 18:17, 29:25, 35:13, 40:10
**heads** [1] - 21:3
**health** [3] - 10:19, 50:9, 52:16
**healthy** [1] - 52:8
**hear** [7] - 3:19, 7:16, 7:17, 28:4, 40:8, 44:3, 52:19
**heard** [10] - 5:6, 14:22, 34:9, 34:21, 35:13, 35:15, 37:17, 43:22, 50:16, 52:23
**HEARING** [1] - 1:8
**hearing** [2] - 44:24, 57:8
**heart** [1] - 45:1
**heavy** [1] - 19:8
**heck** [1] - 56:21
**help** [12] - 9:10, 16:8, 16:12, 17:2, 19:14, 27:21, 41:11, 41:15, 44:4, 48:5, 52:14, 57:11
**helped** [2] - 41:16, 44:8
**hesitate** [1] - 57:11
**Hi** [1] - 11:4
**high** [4] - 15:12, 18:10, 38:3, 47:5
**higher** [1] - 47:16
**himself** [11] - 9:18, 12:12, 13:13, 13:22, 18:22, 25:15, 25:16, 33:17, 35:23, 44:4, 49:8
**hinder** [3] - 11:21, 43:2, 43:3
**history** [17] - 3:16, 3:25, 4:8, 4:16, 4:23, 6:8, 6:12, 6:14, 7:6, 18:23, 19:18, 32:7, 36:8, 36:18, 36:20, 39:22, 50:4
**History** [3] - 5:8, 7:7, 7:8
**hit** [1] - 57:9
**hold** [2] - 30:11, 39:7
**holding** [1] - 9:6
**hole** [2] - 47:25, 48:19
**home** [4] - 15:13, 16:10, 20:11, 53:11
**homes** [2] - 20:7, 20:9
**honest** [1] - 12:9
**honestly** [1] - 42:17
**Honor** [99] - 2:11, 2:15, 2:22, 2:25, 3:10, 3:14, 3:17, 3:23, 4:4, 4:6, 4:15, 4:22, 5:3, 5:7, 5:10,

5:14, 5:22, 7:10, 7:13, 7:20, 7:23, 14:7, 14:11, 17:20, 17:24, 19:24, 23:2, 24:5, 24:7, 24:9, 24:10, 24:14, 24:16, 24:22, 25:7, 25:11, 26:7, 26:10, 26:16, 27:1, 27:15, 28:5, 28:14, 28:21, 28:23, 29:11, 29:14, 30:4, 30:6, 30:12, 30:15, 30:20, 31:5, 31:11, 31:16, 31:24, 32:1, 32:6, 32:10, 32:14, 32:23, 33:8, 33:11, 33:14, 33:18, 34:8, 34:23, 35:4, 35:7, 35:25, 36:13, 36:17, 36:23, 37:3, 37:9, 37:15, 37:19, 39:11, 39:17, 40:19, 42:17, 44:22, 45:2, 45:4, 45:17, 45:20, 46:5, 46:10, 51:12, 51:15, 53:2, 53:25, 54:11, 55:4, 55:7, 56:7, 57:18, 57:21, 57:22
**HONORABLE** [1] - 1:9
**Honorable** [2] - 2:5, 57:23
**honored** [2] - 56:5, 56:8
**hope** [5] - 13:25, 22:1, 42:24, 44:16, 57:1
**hopefully** [2] - 23:15, 44:11
**Hopwood** [2] - 43:21
**hours** [4] - 41:4, 51:18, 51:23, 52:2
**Howard** [9] - 3:1, 11:4, 11:5, 11:8, 14:8, 14:10, 14:13, 14:14, 17:15
**HOWARD** [7] - 11:4, 14:11, 14:13, 14:15, 14:17, 14:21, 17:17
**hurt** [4] - 16:8, 16:21, 40:4, 46:24

---

### I

**idea** [1] - 21:4
**ideal** [2] - 18:4, 52:20
**ideas** [2] - 21:3, 21:23
**identities** [1] - 26:5
**identity** [3] - 27:12, 32:16, 33:6
**important** [2] - 34:25, 36:7

**importantly** [1] - 13:20
**impose** [3] - 34:2, 39:1, 52:23
**imposed** [1] - 53:3
**imposing** [3] - 23:13, 51:14, 53:11
**impressed** [1] - 49:14
**imprisonment** [2] - 36:15
**improve** [1] - 35:23
**IN** [1] - 1:1
**inaudible** [1] - 11:6
**incarceration** [5] - 23:6, 23:11, 23:14, 36:25, 38:21
**incident** [1] - 23:23
**inclined** [1] - 52:23
**include** [2] - 37:4, 46:16
**incredibly** [1] - 47:20
**incur** [1] - 52:6
**indicate** [1] - 21:6
**individual** [7] - 26:5, 33:6, 34:18, 45:6, 48:17, 50:2, 50:4
**individuals** [4] - 34:11, 45:24, 50:20
**industriousness** [1] - 32:24
**inference** [2] - 49:5, 49:7
**influenced** [1] - 38:1
**influences** [1] - 11:12
**information** [5] - 31:13, 52:13, 52:14, 56:3, 56:4
**Inmate** [1] - 52:5
**inmates** [1] - 44:5
**inside** [1] - 18:9
**insight** [1] - 22:13
**Insight** [1] - 52:19
**insightful** [1] - 22:8
**instances** [3] - 27:14, 27:15, 32:15
**instant** [5] - 5:13, 6:3, 32:20
**instilled** [1] - 16:19
**Institution** [1] - 54:1
**institutions** [5] - 26:4, 26:25, 27:7, 33:6, 42:6
**instructions** [1] - 52:17
**intact** [1] - 12:17
**integral** [1] - 25:20
**intelligence** [1] - 32:24
**intelligent** [3] - 11:14, 20:11, 21:19
**interested** [1] - 19:5

**interesting** [1] - 21:12
**interrupted** [1] - 42:22
**interruption** [1] - 11:9
**introduce** [1] - 10:23
**introducing** [1] - 10:5
**investment** [1] - 27:9
**involved** [6] - 10:16, 19:22, 45:22, 45:25, 52:11, 57:15
**involvement** [1] - 28:22
**Irma** [1] - 1:20
**issue** [4] - 5:18, 24:2, 26:23, 28:6
**issues** [1] - 10:20
**itself** [1] - 54:24
**IVY** [1] - 1:14

---

### J

**jail** [6] - 23:3, 38:12, 38:14, 38:16, 38:20
**job** [2] - 15:21, 56:2
**jobs** [4] - 21:13, 21:15, 50:17, 50:22
**Johnson** [53] - 2:12, 2:16, 2:21, 3:7, 6:14, 6:21, 7:1, 8:10, 8:17, 11:2, 12:7, 14:19, 19:11, 19:12, 19:15, 19:22, 20:1, 20:10, 20:15, 20:21, 20:23, 21:9, 21:22, 22:12, 23:22, 28:12, 29:18, 30:9, 30:23, 31:4, 34:5, 34:19, 35:15, 35:17, 35:23, 36:3, 38:19, 39:4, 40:6, 42:22, 43:6, 44:21, 47:16, 47:22, 48:18, 49:14, 51:11, 51:17, 53:10, 54:20, 55:14, 55:20, 56:15
**JOHNSON** [1] - 1:6
**Johnson's** [3] - 6:16, 45:9, 47:1
**joint** [3] - 31:2, 31:6, 31:7
**JONES** [1] - 10:25
**Jones** [1] - 10:25
**JUDGE** [1] - 1:9
**judge** [2] - 7:4, 46:22
**judged** [1] - 17:11
**judges** [1] - 6:10
**judgment** [7] - 20:4, 20:14, 20:18, 33:12, 37:5, 37:13, 54:24
**juice** [1] - 44:12
**July** [1] - 25:25
**jump** [1] - 50:11

**jumps** [1] - 6:14
**June** [2] - 56:15, 56:17

---

### K

**keep** [8] - 13:7, 15:7, 34:18, 50:10, 51:19, 52:15, 56:24, 57:2
**Keith** [4] - 9:21, 10:3, 10:9, 10:10
**KENILWORTH** [1] - 1:18
**Kerr** [2] - 58:1, 58:7
**KERR** [1] - 1:23
**key** [1] - 13:12
**kid** [2] - 8:21, 41:7
**kids** [3] - 8:24, 15:9, 16:1
**kind** [6] - 8:19, 9:14, 15:1, 16:8, 18:15, 19:24
**knowing** [1] - 12:18
**knowingly** [1] - 5:17
**known** [2] - 10:10, 14:24
**knows** [2] - 13:21, 20:17

---

### L

**lady** [1] - 13:9
**lame** [2] - 21:3, 21:4
**LANE** [2] - 1:14, 1:24
**lapse** [1] - 33:12
**Largo** [1] - 8:8
**last** [3] - 12:3, 14:7, 48:11
**lasted** [1] - 20:16
**lastly** [1] - 37:3
**law** [14] - 6:7, 26:8, 26:11, 29:19, 33:20, 36:12, 43:24, 44:9, 47:18, 47:20, 50:12, 55:25, 56:1, 57:7
**lawyer** [3] - 40:7, 43:13, 44:8
**lawyers** [2] - 44:6, 44:7
**leadership** [2] - 28:1, 28:6
**least** [6] - 30:18, 45:9, 45:12, 49:25, 53:3, 54:22
**left** [2] - 37:14, 54:10
**length** [4] - 28:20, 34:4, 48:20, 54:4
**lengthy** [2] - 23:3, 49:2
**less** [2] - 4:17, 51:6
**level** [1] - 7:8

**levels** [1] - 22:23
**license** [5] - 4:11, 4:21, 5:12, 5:16, 5:18
**life** [25] - 9:4, 9:16, 9:21, 9:22, 11:12, 15:1, 15:2, 17:10, 21:8, 21:25, 37:22, 39:20, 39:21, 39:25, 40:1, 40:2, 40:22, 41:1, 41:9, 43:2, 43:12, 47:1, 50:18, 51:22, 57:16
**life-long** [1] - 51:22
**lift** [2] - 41:13, 41:17
**light** [3] - 7:5, 25:1, 36:14
**likely** [4] - 47:16, 48:21, 49:7, 49:8
**likewise** [1] - 52:12
**limit** [1] - 49:19
**limited** [2] - 32:6, 36:19
**lined** [1] - 27:5
**lines** [3] - 28:1, 52:7, 57:7
**list** [1] - 43:10
**listed** [1] - 50:22
**live** [6] - 8:6, 8:8, 14:14, 15:16, 18:8, 41:23
**lived** [1] - 16:16
**lives** [1] - 16:1
**living** [1] - 42:11
**loaded** [1] - 29:20
**location** [1] - 26:10
**locations** [1] - 27:5
**lodge** [1] - 54:24
**long-running** [3] - 25:7, 32:4, 33:15
**look** [8] - 6:10, 17:9, 20:3, 20:21, 35:16, 37:21, 44:13, 48:11
**looked** [2] - 21:12, 50:16
**looking** [7] - 15:22, 29:22, 29:23, 30:13, 30:19, 47:15
**loop** [1] - 57:2
**lose** [1] - 11:10
**loss** [4] - 30:3, 45:20, 46:2, 46:6
**loud** [1] - 7:25
**love** [1] - 17:7
**low** [6] - 6:22, 13:12, 22:23, 24:15, 36:16, 36:22
**Lowell** [2] - 26:15, 26:18
**lower** [2] - 31:17,

36:21
**luck** [1] - 57:1

### M

**ma'am** [10] - 22:20, 40:15, 40:25, 42:7, 43:8, 43:16, 43:23, 44:15, 44:18, 57:4
**magic** [1] - 20:20
**magnitude** [1] - 47:12
**majors** [3] - 19:18, 32:20, 32:21
**man** [8] - 16:8, 18:8, 18:19, 21:24, 23:4, 37:25, 38:7
**mandatory** [2] - 51:10, 51:14
**manner** [2] - 13:14, 37:14
**mark** [1] - 19:20
**MARLENE** [1] - 1:23
**Marlene** [2] - 58:1, 58:7
**marshals** [1] - 56:22
**MARTIN** [1] - 1:23
**MARTIN-KERR** [1] - 1:23
**MARYLAND** [5] - 1:1, 1:10, 1:15, 1:19, 1:25
**Maryland** [8] - 2:4, 8:8, 14:15, 26:17, 26:19, 29:20, 52:18, 56:2
**mask** [2] - 10:8, 39:16
**masks** [1] - 2:19
**matter** [4] - 35:16, 43:3, 57:5, 58:3
**matters** [1] - 55:20
**mature** [4] - 20:3, 20:4
**maximum** [1] - 27:9
**mean** [14] - 5:16, 9:17, 12:21, 15:5, 19:15, 19:18, 24:18, 27:23, 29:2, 29:7, 34:3, 37:25, 40:21, 57:16
**means** [1] - 54:20
**Mechanical** [1] - 1:21
**medical** [1] - 19:3
**meet** [2] - 11:2, 33:19
**memo** [2] - 6:1, 25:23
**memorializes** [1] - 56:10
**menial** [1] - 21:14
**mental** [2] - 50:9, 52:16
**mentally** [1] - 12:13
**mentioned** [2] - 11:10, 18:14

**merely** [1] - 35:5
**message** [3] - 33:10, 48:21
**met** [1] - 36:24
**Michelle** [1] - 11:4
**microphone** [1] - 8:4
**might** [2] - 28:2, 47:17
**million** [1] - 25:14
**mind** [2] - 10:4, 39:11
**minor** [3] - 4:17, 5:20
**minute** [2] - 2:7, 16:7
**minutes** [1] - 24:24
**mistake** [4] - 17:6, 17:11, 40:21, 48:22
**mistaken** [1] - 30:15
**mistakes** [2] - 40:22, 43:14
**misunderstanding** [1] - 31:20
**mitigate** [1] - 35:21
**mitigation** [1] - 49:13
**model** [3] - 9:15, 9:22, 11:15
**modification** [1] - 53:8
**modified** [2] - 31:15, 31:16
**modify** [3] - 26:21, 52:10, 56:19
**mom** [4] - 9:13, 11:5, 15:5, 41:11
**momentary** [2] - 33:12, 36:2
**money** [8] - 16:10, 20:16, 29:24, 41:22, 42:4, 42:8, 42:16, 47:13
**Money** [15] - 25:14, 25:21, 25:24, 26:1, 26:12, 26:14, 26:21, 27:4, 27:8, 27:11, 27:17, 28:11, 28:13, 47:11
**month** [5] - 28:16, 32:12, 37:24, 52:4, 54:22
**months** [26] - 6:23, 6:24, 12:3, 20:16, 24:15, 28:17, 28:22, 33:9, 35:15, 37:1, 38:12, 38:14, 38:17, 38:18, 38:24, 47:5, 47:8, 47:17, 47:23, 48:11, 51:4, 51:7
**morning** [8] - 2:6, 2:11, 2:15, 2:17, 7:23, 7:24, 14:11, 14:12
**most** [6] - 5:20, 9:25, 10:3, 19:15, 20:12, 42:15

**mother** [2] - 8:15, 18:7
**motion** [4] - 3:15, 6:19, 37:4, 37:8
**motivated** [1] - 13:8
**move** [4] - 15:12, 42:11, 42:13, 44:12
**moved** [1] - 15:14
**moving** [3] - 15:18, 32:1, 44:17
**MR** [105] - 2:11, 2:15, 2:22, 2:25, 3:14, 3:17, 3:22, 4:6, 5:3, 5:7, 5:22, 5:24, 7:10, 7:20, 7:23, 7:25, 8:2, 8:3, 8:5, 8:6, 8:8, 8:9, 8:11, 8:12, 8:14, 8:16, 8:18, 9:24, 10:2, 10:9, 10:25, 11:11, 12:5, 12:9, 13:1, 13:17, 13:20, 14:2, 14:5, 14:7, 14:10, 14:11, 14:13, 14:14, 14:15, 14:16, 14:17, 14:18, 14:21, 17:17, 17:20, 17:22, 17:24, 19:24, 20:24, 21:2, 22:3, 22:11, 22:22, 23:19, 24:3, 24:7, 24:9, 24:22, 25:1, 28:5, 29:6, 29:11, 29:14, 30:4, 30:12, 30:15, 30:20, 30:24, 31:1, 31:5, 31:7, 31:11, 31:16, 31:19, 31:24, 32:1, 34:8, 34:23, 35:25, 37:3, 37:9, 37:15, 37:19, 45:4, 45:8, 45:12, 45:16, 45:20, 45:24, 46:5, 46:10, 51:12, 51:15, 53:25, 54:11, 55:7, 56:7, 57:7, 57:22
**MS** [4] - 4:4, 7:13, 11:4, 53:2
**multiple** [1] - 49:4
**multitude** [1] - 6:3
**must** [6] - 47:2, 47:4, 47:7, 50:4, 56:1, 56:3

### N

**name** [6] - 8:1, 8:2, 10:25, 11:4, 14:13, 43:21
**names** [7] - 10:21, 26:6, 27:12, 27:13, 27:20, 42:6, 47:12
**natural** [1] - 18:5

**nature** [2] - 25:6, 32:5
**nearly** [1] - 49:12
**necessarily** [2] - 35:4, 50:2
**necessary** [9] - 5:10, 6:4, 28:9, 34:3, 34:13, 34:25, 35:9, 37:1, 47:4
**necessity** [1] - 36:6
**neck** [2] - 50:1
**need** [10] - 17:6, 23:7, 24:1, 48:10, 49:1, 51:1, 52:2, 53:14, 57:14
**needed** [1] - 9:9
**negative** [2] - 11:11, 53:5
**negotiate** [1] - 27:16
**negotiated** [10] - 26:4, 29:24, 30:8, 30:9, 30:21, 45:5, 45:9, 45:13, 46:7, 46:13
**negotiating** [1] - 25:16
**negotiation** [1] - 25:14
**never** [10] - 8:19, 8:20, 9:16, 12:10, 12:15, 12:22, 15:18, 19:2, 40:4
**new** [2] - 52:6, 55:25
**next** [2] - 14:7, 16:23
**nice** [2] - 41:23, 42:1
**non** [1] - 55:17
**non-binding** [1] - 55:17
**nonetheless** [3] - 6:2, 29:21, 36:23
**North** [5] - 4:10, 18:16, 26:9, 26:18, 26:20
**north** [1] - 43:20
**note** [4] - 6:1, 6:19, 29:18, 32:4, 35:3, 36:5, 46:11
**noted** [6] - 5:24, 22:4, 28:10, 32:18, 35:6
**notes** [2] - 23:22, 36:19
**nothing** [3] - 21:5, 21:6, 44:22
**notice** [2] - 21:13, 22:5
**noting** [1] - 25:11
**November** [1] - 58:5
**number** [8] - 2:18, 29:16, 29:17, 29:25, 31:3, 38:11, 42:18
**Number** [1] - 1:4
**numerous** [1] - 32:15

**O**

**objection** [2] - 37:7, 37:9
**obligations** [2] - 56:6, 56:8
**obvious** [1] - 32:23
**obviously** [3] - 4:16, 19:22, 37:20
**occur** [2] - 5:3, 21:7
**occurred** [3] - 5:2, 20:19, 20:20
**odds** [1] - 32:6
**OF** [4] - 1:1, 1:3, 1:8, 1:13
**offense** [21] - 4:13, 4:25, 5:14, 5:25, 6:18, 7:8, 25:7, 25:8, 32:9, 32:10, 32:11, 33:20, 36:7, 36:9, 36:14, 45:23, 47:8, 47:14, 49:10, 49:25, 54:21
**offenses** [5] - 6:3, 29:8, 50:21
**office** [5] - 26:1, 26:24, 39:19, 52:7, 52:10
**OFFICE** [1] - 1:13
**Office** [5] - 26:14, 26:15, 26:18, 33:5
**officer** [2] - 52:12, 57:12
**offices** [2] - 25:21, 28:14
**Offices** [1] - 26:17
**Official** [1] - 58:7
**OFFICIAL** [1] - 1:24
**often** [1] - 35:16
**old** [2] - 14:16, 14:25
**once** [4] - 15:14, 21:24, 51:7, 54:22
**One** [1] - 54:5
**one** [40] - 2:6, 3:3, 5:10, 5:11, 6:9, 6:15, 6:22, 10:18, 17:11, 18:1, 18:14, 19:3, 19:17, 22:3, 22:14, 22:15, 22:16, 22:18, 22:19, 22:25, 25:19, 27:22, 29:3, 29:4, 35:10, 35:14, 39:23, 41:24, 43:9, 44:5, 47:1, 48:15, 48:24, 50:1, 50:22, 50:23
**one-on-one** [4] - 22:14, 22:16, 22:18, 22:19
**ones** [2] - 18:2, 50:24
**Open** [1] - 46:18

**open** [1] - 52:6
**opened** [3] - 26:6, 27:13, 27:19
**opinion** [1] - 37:23
**opportunity** [1] - 39:4
**oppose** [1] - 24:24
**opposed** [1] - 13:22
**option** [1] - 53:6
**options** [1] - 19:4
**Order** [1] - 2:2
**order** [13] - 26:21, 27:1, 27:16, 29:23, 30:18, 31:15, 32:14, 33:16, 36:23, 37:10, 53:18, 56:1, 56:10
**ordered** [1] - 56:16
**orders** [1] - 47:11
**Orders** [15] - 25:15, 25:21, 25:24, 26:1, 26:12, 26:14, 26:21, 27:5, 27:8, 27:11, 27:17, 28:11, 28:13, 47:11
**otherwise** [1] - 7:14
**outside** [1] - 44:6
**overcome** [3] - 18:24, 18:25, 43:5
**overly** [1] - 6:15
**overstates** [1] - 4:16
**overwhelm** [2] - 37:23, 38:9
**own** [8] - 10:5, 15:1, 15:9, 17:5, 18:6, 20:6, 38:2

**P**

**p.m** [1] - 56:17
**paid** [5] - 34:6, 42:10, 54:7, 54:8, 55:2
**paper** [1] - 27:3
**paragraph** [1] - 30:21
**pardon** [1] - 22:11
**parent** [1] - 20:7
**parents** [4] - 16:16, 19:15, 20:12, 57:15
**part** [3] - 10:3, 52:5, 56:11
**partial** [1] - 9:12
**participate** [3] - 25:8, 52:16, 53:19
**participated** [1] - 28:8
**participation** [1] - 26:8
**particular** [1] - 47:1
**parties** [2] - 8:25, 55:10
**pass** [1] - 27:6
**past** [3] - 22:9, 43:11, 50:7

**path** [1] - 34:17
**Paula** [1] - 2:5
**PAULA** [1] - 1:9
**pause** [2] - 2:8, 3:5
**pay** [17] - 4:9, 4:10, 4:19, 16:11, 17:1, 35:1, 35:2, 42:12, 42:13, 42:14, 51:21, 51:25, 52:3, 54:21, 54:23, 54:25
**payment** [1] - 37:14
**payments** [1] - 37:12
**PBJ** [1] - 5:19
**penalties** [1] - 38:25
**penalty** [2] - 19:1, 19:9
**people** [27] - 2:18, 4:20, 9:25, 10:1, 13:11, 17:3, 18:21, 18:22, 18:25, 20:8, 21:2, 21:11, 22:23, 23:9, 38:14, 38:15, 39:6, 42:5, 43:10, 44:8, 44:13, 46:24, 49:16, 50:14, 50:18, 57:14
**people's** [2] - 27:19, 47:12
**per** [2] - 52:3, 54:21
**perfect** [2] - 21:20, 52:17
**period** [11] - 23:6, 23:11, 23:14, 25:10, 32:12, 34:4, 34:17, 35:3, 36:25, 37:24, 38:21
**person** [4] - 6:14, 12:12, 21:15, 46:20
**personal** [3] - 20:6, 36:8, 36:18
**personally** [2] - 30:8, 30:21
**persuaded** [1] - 49:3
**photograph** [3] - 25:22, 25:23, 26:2
**pieces** [1] - 27:3
**place** [4] - 6:10, 7:7, 34:5, 39:24
**placing** [1] - 27:22
**Plaintiff** [1] - 1:4
**PLAINTIFF** [1] - 1:12
**plan** [2] - 33:14, 55:2
**planned** [1] - 47:14
**planning** [1] - 32:17
**Plata** [2] - 5:2, 7:1
**played** [1] - 25:20
**plea** [7] - 4:23, 30:13, 30:18, 45:8, 46:15, 55:12, 55:21
**pleading** [1] - 4:12
**pled** [2] - 29:8, 30:3

**plexiglass** [1] - 10:6
**plus** [1] - 27:24
**podium** [2] - 24:7, 39:12
**point** [12] - 5:17, 6:2, 11:21, 24:1, 24:19, 32:1, 34:11, 36:17, 37:20, 48:14, 49:16, 53:7
**pointed** [1] - 32:7
**points** [8] - 4:8, 4:14, 4:25, 5:11, 6:2, 6:13, 24:12, 25:4
**policy** [1] - 46:15
**poor** [1] - 37:21
**posed** [2] - 29:16, 29:17
**position** [1] - 33:2
**positive** [14] - 9:4, 9:15, 9:20, 9:22, 11:15, 15:7, 15:10, 15:11, 18:23, 21:8, 22:22, 22:25, 53:7, 53:11
**possessed** [1] - 29:18
**possessing** [1] - 49:6
**possession** [1] - 28:21
**possible** [1] - 55:23
**Post** [6] - 26:14, 26:15, 26:17, 26:18, 33:5
**post** [4] - 25:21, 26:1, 26:24, 28:13
**postal** [14] - 25:14, 25:21, 25:23, 25:24, 26:1, 27:4, 27:8, 27:11, 27:16, 27:17, 28:11, 28:13, 39:18, 46:7
**practice** [1] - 20:6
**practices** [1] - 55:12
**preclude** [1] - 19:6
**premeditated** [1] - 47:14
**present** [1] - 2:16
**PRESENT** [1] - 1:20
**presented** [1] - 17:13
**presentence** [9] - 3:8, 3:13, 3:19, 7:15, 21:13, 22:4, 36:4, 50:18, 51:11
**presiding** [1] - 2:5
**pretrial** [7] - 23:22, 35:16, 36:3, 36:12, 36:21, 47:22, 56:23
**pretrial's** [1] - 35:20
**pretty** [4] - 4:7, 17:14, 21:3, 38:23, 49:24
**price** [1] - 47:12

**print** [2] - 26:22, 27:3
**printed** [1] - 27:4
**printers** [1] - 26:22
**prison** [11] - 6:22, 34:10, 34:22, 44:1, 44:3, 48:1, 48:17, 48:18, 51:4, 54:3
**Prisons** [1] - 51:5
**Probation** [1] - 1:20
**probation** [12] - 4:13, 5:13, 6:4, 23:5, 52:7, 52:10, 52:12, 52:21, 53:1, 53:12, 53:19, 57:12
**problem** [3] - 8:19, 12:10, 20:5
**problematic** [1] - 12:12
**problems** [2] - 18:6, 22:5
**proceeding** [1] - 46:16
**proceedings** [2] - 57:25, 58:3
**PROCEEDINGS** [1] - 1:8
**Proceedings** [1] - 1:21
**Process** [1] - 55:25
**process** [1] - 56:10
**Produced** [1] - 1:22
**professor** [2] - 43:24, 44:9
**Program** [1] - 52:5
**program** [5] - 52:16, 52:17, 52:22, 53:13, 53:20
**progress** [1] - 52:15
**promise** [1] - 18:3
**promising** [1] - 34:11
**promoting** [1] - 33:20
**proper** [1] - 13:13
**protected** [1] - 23:8
**Protection** [1] - 56:1
**protracted** [4] - 19:22, 25:10, 28:22, 32:11
**proud** [2] - 13:24, 19:16
**proverbial** [1] - 35:7
**provide** [2] - 33:22, 52:12
**provider** [1] - 22:10
**providing** [1] - 33:21
**PSR** [1] - 5:9
**pull** [1] - 8:3
**punish** [1] - 34:14
**punishment** [4] - 24:17, 33:21, 34:22, 36:13
**punitive** [1] - 6:16
**purposes** [1] - 27:22

**pursuing** [1] - 32:20
**pursuits** [1] - 33:24
**push** [1] - 13:5
**put** [12] - 21:3, 23:4, 25:9, 26:16, 33:24, 39:20, 40:13, 47:11, 47:12, 47:13, 51:1, 53:12
**putting** [1] - 19:16
**PX-19-570** [1] - 2:13

## Q

**questions** [1] - 51:13
**quickly** [1] - 55:23
**quiet** [1] - 12:20
**quite** [4] - 6:18, 19:23, 23:23, 39:9
**quiver** [2] - 34:2, 35:7

## R

**Raghavan** [12] - 2:14, 3:20, 5:6, 5:15, 7:19, 27:21, 33:25, 37:2, 47:3, 47:10, 55:6, 56:5
**RAGHAVAN** [44] - 1:14, 2:11, 3:22, 5:7, 5:22, 5:24, 7:10, 24:7, 24:9, 24:22, 25:1, 28:5, 29:6, 29:11, 29:14, 30:4, 30:12, 30:15, 30:20, 30:24, 31:1, 31:5, 31:7, 31:11, 31:16, 31:19, 31:24, 32:1, 34:8, 34:23, 35:25, 37:3, 37:15, 45:4, 45:8, 45:12, 45:16, 45:20, 45:24, 46:5, 46:10, 55:7, 56:7, 57:22
**raised** [1] - 43:4
**RAJEEV** [1] - 1:14
**Rajeev** [1] - 2:14
**RAMASWAMY** [1] - 1:14
**ran** [1] - 44:7
**Rasheed** [4] - 3:1, 11:5, 14:8, 14:13
**rather** [3] - 9:10, 13:4, 34:7
**read** [2] - 43:20, 44:11
**reading** [1] - 27:25
**ready** [1] - 11:20
**real** [3] - 16:20, 19:20, 44:9
**realize** [2] - 32:14, 41:8

**really** [23] - 4:19, 6:24, 10:12, 10:18, 13:15, 15:1, 20:2, 21:20, 22:24, 24:4, 28:3, 35:20, 38:18, 40:17, 40:21, 41:7, 41:8, 41:15, 41:16, 42:10, 48:4, 51:21, 57:5
**receipts** [1] - 27:18
**receive** [2] - 56:16, 56:18
**recent** [1] - 55:10
**recidivism** [1] - 6:17
**recommend** [2] - 53:2, 54:1
**recommended** [1] - 7:18
**recommending** [1] - 52:21
**record** [6] - 24:19, 29:2, 35:11, 53:13, 55:18, 58:2
**Recorded** [1] - 1:21
**recovered** [1] - 29:19
**recovers** [1] - 14:1
**reduces** [1] - 6:22
**reflect** [5] - 4:17, 4:18, 33:19, 36:6
**reform** [1] - 43:25
**regard** [6] - 3:16, 29:8, 49:3, 53:1, 53:16, 55:17
**regards** [2] - 28:14, 29:16
**rehabilitated** [2] - 12:13, 21:7
**rehabilitative** [1] - 34:6
**relation** [1] - 27:22
**relationship** [5] - 8:9, 14:4, 18:7, 20:22, 20:25
**relatively** [1] - 25:19
**release** [15] - 12:4, 24:2, 34:24, 35:4, 35:16, 36:3, 36:4, 36:21, 38:6, 47:22, 48:2, 50:9, 51:8, 52:4, 52:14
**rely** [1] - 21:17
**remain** [2] - 19:12, 23:19
**remained** [1] - 12:17
**remaining** [1] - 55:20
**remember** [5] - 41:2, 41:5, 42:2, 44:16, 50:24
**remorse** [1] - 34:12
**remorseful** [1] - 16:22
**remove** [1] - 39:15

**rent** [1] - 42:14
**reoccurring** [1] - 21:23
**repeated** [1] - 33:15
**repeatedly** [1] - 32:16
**report** [12] - 3:8, 3:13, 3:19, 4:1, 7:15, 21:13, 22:4, 23:22, 50:18, 51:11, 56:16, 56:21
**REPORTER** [1] - 1:24
**Reporter** [1] - 58:7
**reports** [1] - 41:24
**representation** [1] - 6:8
**representative** [1] - 6:15
**represented** [1] - 43:25
**representing** [2] - 2:16, 20:6
**request** [1] - 24:20
**requested** [1] - 52:13
**require** [2] - 32:12, 32:22
**requirements** [1] - 33:19
**requires** [2] - 33:7, 36:14
**research** [1] - 19:4
**residence** [2] - 26:11, 27:18
**residences** [1] - 26:9
**resources** [1] - 53:1
**respect** [7] - 29:13, 33:20, 36:12, 47:18, 47:20, 55:16, 55:19
**responsibilities** [2] - 42:15, 42:16
**Responsibility** [1] - 52:5
**responsibility** [3] - 9:12, 42:18, 43:1
**responsible** [3] - 9:5, 25:13, 25:15
**restitution** [19] - 30:18, 30:23, 31:10, 31:12, 31:15, 31:22, 34:6, 35:1, 35:2, 37:5, 37:11, 51:21, 52:1, 52:3, 53:22, 54:13, 54:15, 54:19, 54:23
**restorative** [1] - 34:6
**result** [1] - 4:10
**retrospect** [1] - 20:17
**return** [2] - 27:9, 29:24
**review** [1] - 3:8
**reviewed** [1] - 51:9
**right-sized** [1] - 50:11

**risk** [2] - 6:17, 34:15
**RIVERDALE** [1] - 1:19
**RMR** [2] - 1:23, 58:1
**road** [1] - 57:10
**robberies** [1] - 44:2
**ROBERTS** [1] - 1:17
**Rocky** [1] - 10:17, 13:6
**role** [7] - 9:15, 9:22, 11:15, 15:20, 28:1, 28:3, 28:6
**rough** [1] - 9:14
**roughly** [3] - 14:16, 31:10, 31:22
**routinely** [1] - 4:20
**RPR** [2] - 1:23, 58:1
**rules** [1] - 55:14
**run** [3] - 7:3, 24:1, 54:5
**running** [4] - 25:7, 29:7, 32:4, 33:15
**runs** [2] - 27:3, 27:8

## S

**safely** [1] - 2:19
**satisfied** [1] - 55:21
**satisfy** [1] - 23:7
**saved** [3] - 15:2, 41:16
**saw** [3] - 15:7, 20:15, 41:24
**scheme** [6] - 4:15, 20:16, 25:18, 25:20, 28:23, 32:5
**scholarship** [1] - 41:19
**school** [7] - 15:13, 15:14, 18:10, 19:3, 19:17, 21:14, 38:3
**science** [1] - 40:11
**score** [3] - 3:16, 3:25, 4:3
**searched** [1] - 26:9
**second** [4] - 3:3, 25:7, 32:1, 55:25
**see** [12] - 2:18, 3:25, 4:1, 9:20, 11:7, 18:21, 20:1, 41:10, 46:21, 48:9, 49:25, 50:5, 52:22
**seeing** [2] - 3:4, 15:4
**seized** [1] - 42:1
**Self** [1] - 56:13
**self** [3] - 51:5, 56:14, 56:21
**self-report** [1] - 56:21
**self-surrender** [2] - 51:5, 56:14
**send** [7] - 8:21, 16:9, 33:9, 33:10, 35:9,

48:21, 53:7
**sense** [2] - 20:13, 36:1
**sent** [1] - 37:11
**sentence** [34] - 6:23, 7:18, 23:3, 24:14, 24:16, 25:2, 25:3, 28:18, 29:10, 32:13, 33:7, 33:8, 33:22, 34:3, 34:10, 34:13, 35:8, 36:6, 36:21, 38:13, 42:25, 46:22, 47:4, 47:16, 49:2, 49:21, 49:23, 50:2, 51:4, 53:23, 54:3, 54:10, 55:21
**sentenced** [4] - 27:23, 28:20, 49:1, 50:21
**sentences** [2] - 28:16, 48:16
**sentencing** [9] - 2:12, 3:7, 5:1, 6:1, 25:23, 27:2, 43:25, 44:10, 46:16
**SENTENCING** [1] - 1:8
**sentencings** [1] - 17:25
**separate** [5] - 5:11, 27:15, 29:3, 29:9, 49:10
**series** [1] - 44:1
**serious** [16] - 5:25, 6:19, 25:6, 32:9, 32:10, 33:7, 33:22, 35:7, 35:8, 35:18, 36:14, 36:15, 36:25, 46:24, 47:14, 49:9
**seriousness** [5] - 33:20, 36:6, 36:9, 36:14, 47:7
**serve** [2] - 11:19, 11:25
**serves** [1] - 23:10
**service** [4] - 46:7, 51:18, 51:22, 51:24
**services** [1] - 35:20
**session** [1] - 2:4
**set** [1] - 27:14
**settled** [1] - 6:7
**several** [4] - 10:7, 31:2, 31:6, 31:7
**severe** [1] - 39:1
**shade** [1] - 41:25
**shock** [1] - 9:1
**shocked** [1] - 13:23
**shoes** [1] - 42:1
**Shon** [2] - 43:21
**short** [3] - 23:6, 23:14, 50:17
**shoulder** [1] - 41:14

**shoulders** [1] - 41:18
**show** [1] - 56:4
**shows** [1] - 19:22
**sidetracked** [1] - 22:24
**sign** [1] - 37:10
**silence** [1] - 39:7
**silent** [1] - 19:12
**simple** [1] - 4:11
**simply** [4] - 4:19, 6:15, 19:1, 21:21
**sincere** [1] - 34:12
**single** [1] - 33:13
**sisters** [3] - 9:15, 41:12, 50:13
**situation** [6] - 13:3, 15:6, 15:13, 17:12, 23:1, 48:20
**situations** [1] - 16:17
**six** [3] - 14:25, 33:17, 50:24
**sized** [1] - 50:11
**small** [2] - 23:11, 38:21
**smart** [1] - 19:23
**snags** [1] - 57:9
**so-called** [1] - 17:5
**social** [1] - 52:24
**socially** [1] - 2:19
**society** [4] - 11:16, 11:19, 11:25, 13:10
**Soloff** [1] - 55:11
**someone** [4] - 18:2, 34:14, 43:19, 49:7
**sometime** [1] - 5:4
**sometimes** [4] - 16:22, 20:2, 21:2, 34:12
**somewhat** [1] - 48:15
**sooner** [1] - 51:25
**sophisticated** [3] - 25:7, 25:19, 32:5
**sophomore** [2] - 41:20, 42:12
**sorry** [2] - 11:9, 44:4
**sort** [2] - 14:25, 42:3
**sounds** [1] - 14:3
**SOUTHERN** [1] - 1:2
**speaking** [2] - 28:5, 38:12
**special** [3] - 14:4, 54:7, 54:8
**specific** [5] - 6:11, 35:21, 47:22, 48:10, 52:24
**specifically** [1] - 53:18
**spend** [3] - 15:9, 47:13, 48:16
**spending** [1] - 13:9

**spoiled** [1] - 16:4
**sponsors** [1] - 44:8
**stand** [1] - 10:23
**standard** [2] - 51:10, 51:14
**stands** [1] - 57:24
**star** [1] - 43:20
**start** [2] - 14:21, 47:6
**started** [3] - 41:8, 41:10, 44:4
**state** [2] - 8:1, 12:20
**Statement** [1] - 30:5
**States** [6] - 2:3, 2:12, 2:14, 33:5, 39:18, 55:11
**STATES** [3] - 1:1, 1:3, 1:9, 1:13
**Station** [1] - 26:11
**stay** [6] - 13:11, 19:1, 41:21, 50:12, 52:8, 53:14
**staying** [3] - 9:5, 13:8, 13:10
**STE** [1] - 1:24
**steal** [2] - 25:24, 47:11
**stealing** [1] - 28:13
**stenographic** [1] - 58:2
**Stenography** [1] - 1:21
**step** [1] - 39:12
**stepfather** [6] - 7:21, 8:11, 8:13, 14:22, 15:21, 18:3
**stepson** [1] - 12:3
**still** [6] - 7:1, 11:14, 12:24, 40:12, 54:23, 56:23
**stipulated** [5] - 25:12, 27:14, 30:5, 45:8, 45:16
**stole** [2] - 25:20, 25:25
**stolen** [8] - 25:14, 26:14, 26:21, 27:4, 27:8, 27:11, 27:16, 28:11
**stopped** [1] - 41:19
**story** [1] - 47:1
**straightforward** [1] - 4:7
**strong** [2] - 21:16, 21:19
**strongly** [1] - 55:1
**structured** [1] - 20:8
**struggles** [1] - 39:24
**stupid** [1] - 43:14
**subjects** [2] - 18:12, 20:4
**submission** [1] - 24:11

**submits** [1] - 24:14
**submitted** [3] - 24:13, 25:22, 31:12
**substance** [3] - 52:21, 53:13, 53:20
**substantial** [1] - 33:17
**substantially** [1] - 28:24
**succeed** [1] - 48:6
**success** [1] - 57:6
**suffer** [1] - 22:23
**suffered** [1] - 15:6
**sufficient** [3] - 34:2, 34:13, 47:4
**sugar** [1] - 40:14
**suggests** [3] - 33:9, 52:25, 55:11
**SUITE** [2] - 1:14, 1:18
**supervised** [5] - 34:24, 35:4, 48:2, 50:9, 51:8
**supervision** [16] - 22:5, 22:9, 34:4, 34:5, 34:18, 36:13, 51:10, 51:19, 52:2, 54:4, 54:8, 54:9, 54:22, 56:24, 57:10
**support** [6] - 34:12, 39:6, 41:11, 49:13, 50:10, 52:22
**supporting** [1] - 44:25
**supportive** [2] - 9:3, 9:4
**Supreme** [1] - 44:5
**surprise** [1] - 23:22
**surrender** [4] - 23:16, 51:5, 56:13, 56:14
**surrounds** [1] - 18:22
**suspended** [6] - 4:9, 4:11, 4:12, 4:21, 5:12, 5:16
**suspends** [1] - 5:18

## T

**teach** [1] - 20:13
**ten** [5] - 6:23, 27:24, 28:16, 29:3, 49:6
**ten-month** [1] - 28:16
**tends** [1] - 56:4
**term** [3] - 36:15, 54:4
**terminating** [1] - 52:1
**terms** [2] - 21:5, 38:11
**test** [3] - 53:4, 53:7, 53:11
**testament** [1] - 43:18
**tested** [2] - 53:4, 53:19
**testify** [1] - 2:24
**tests** [1] - 53:5

**THE** [152] - 1:1, 1:1, 1:9, 1:12, 1:13, 1:16, 2:3, 2:6, 2:9, 2:17, 2:23, 3:3, 3:6, 3:10, 3:11, 3:15, 3:18, 3:24, 4:5, 5:1, 5:5, 5:15, 5:23, 6:6, 7:11, 7:14, 7:24, 9:23, 9:25, 10:4, 10:22, 11:2, 11:7, 12:2, 12:6, 12:23, 13:15, 13:18, 13:25, 14:3, 14:6, 14:9, 14:12, 17:15, 17:18, 17:21, 17:23, 19:10, 20:22, 21:1, 22:2, 22:10, 22:12, 22:13, 22:14, 22:15, 22:16, 22:18, 22:19, 22:20, 22:21, 23:18, 23:21, 24:6, 24:8, 24:18, 24:25, 27:21, 29:2, 29:7, 29:12, 30:2, 30:11, 30:13, 30:17, 30:22, 30:25, 31:3, 31:6, 31:9, 31:14, 31:18, 31:21, 31:25, 33:25, 34:9, 35:10, 37:2, 37:7, 37:10, 37:16, 39:3, 39:11, 39:13, 39:14, 39:15, 39:17, 40:6, 40:15, 40:16, 40:19, 40:23, 40:25, 41:22, 42:7, 42:8, 42:10, 42:21, 42:24, 43:6, 43:8, 43:9, 43:16, 43:17, 43:23, 43:24, 44:15, 44:16, 44:18, 44:19, 44:20, 44:21, 44:22, 44:23, 44:24, 45:3, 45:7, 45:11, 45:15, 45:18, 45:22, 46:3, 46:9, 46:19, 51:13, 51:16, 53:9, 54:2, 54:12, 54:14, 54:15, 54:17, 54:18, 55:4, 55:5, 55:9, 56:9, 57:4, 57:5, 57:18, 57:19, 57:23
**theft** [4] - 27:13, 32:15, 32:16, 33:6
**themselves** [1] - 11:15
**they've** [1] - 10:12
**thinking** [1] - 48:24
**third** [1] - 44:14
**thread** [1] - 11:10
**three** [13] - 4:8, 4:14, 4:25, 5:11, 6:13, 6:15, 6:21, 8:14,

15:9, 16:1, 26:12, 50:23, 51:25
**thrown** [1] - 16:20
**throws** [1] - 38:11
**THURSDAY** [1] - 1:10
**ticket** [3] - 4:10, 4:11, 4:19
**Tim** [2] - 15:21, 16:11
**Timothy** [4] - 3:1, 7:21, 8:2, 8:5
**Tino** [4] - 8:19, 10:10, 11:17, 14:19
**Tino's** [1] - 8:11
**today** [8] - 2:18, 3:7, 3:9, 24:13, 25:5, 33:1, 43:18, 55:24
**together** [6] - 8:15, 16:1, 20:25, 21:3, 35:23, 49:25
**took** [5] - 15:1, 25:23, 32:16, 32:17, 44:6
**total** [3] - 3:19, 45:20, 46:2
**totality** [1] - 51:3
**totally** [1] - 39:16
**touch** [3] - 9:13, 12:3, 56:19
**toward** [2] - 24:1, 25:9, 44:17
**track** [2] - 9:19, 11:18
**traffic** [1] - 5:18
**transacting** [1] - 49:9
**TRANSCRIPT** [1] - 1:8
**Transcript** [1] - 1:22
**transcript** [1] - 58:2
**Transcription** [1] - 1:22
**transported** [1] - 56:22
**Treatment** [1] - 22:13
**treatment** [6] - 50:9, 52:16, 52:21, 53:5, 53:7, 53:20
**trial** [2] - 27:3, 27:8
**tried** [2] - 15:7, 15:16
**trouble** [8] - 3:4, 8:20, 9:5, 9:16, 12:13, 15:1, 15:14, 53:16
**try** [4] - 15:10, 16:10, 16:11, 16:23
**trying** [6] - 9:19, 12:18, 35:12, 41:11, 41:12, 42:3
**tuition** [2] - 42:11, 42:13
**turn** [3] - 3:20, 7:16, 37:18
**turned** [3] - 14:17, 23:24, 35:19
**Twelve** [1] - 27:14

**Two** [1] - 54:5
**two** [20] - 3:1, 5:12, 6:2, 7:6, 9:15, 19:17, 20:7, 20:12, 25:4, 26:9, 29:8, 29:9, 29:22, 31:7, 32:20, 43:7, 44:13, 50:22, 50:23, 55:20
**two-parent** [1] - 20:7
**type** [3] - 4:25, 16:17, 21:14
**types** [1] - 21:13

### U

**U.S** [1] - 1:20
**Ulander** [4] - 37:12, 54:6, 54:13, 56:12
**ultimate** [1] - 4:2
**uncle** [1] - 18:3
**under** [6] - 12:8, 22:8, 28:3, 35:5, 55:14, 56:2
**understood** [1] - 30:22
**undertook** [1] - 32:12
**United** [6] - 2:3, 2:12, 2:14, 33:5, 39:18, 55:11
**UNITED** [4] - 1:1, 1:3, 1:9, 1:13
**unknowingly** [1] - 5:17
**unknown** [1] - 45:24
**unlawful** [1] - 33:24
**unless** [2] - 23:21, 52:23
**unsupervised** [2] - 4:13, 5:13
**unusual** [1] - 49:19
**unwarranted** [4] - 27:23, 28:17, 49:1, 49:22
**up** [18] - 3:24, 4:11, 4:20, 7:4, 10:23, 16:16, 18:4, 18:5, 20:24, 21:3, 27:5, 39:12, 39:16, 41:5, 46:4, 50:14, 52:6, 55:22
**upbeat** [1] - 16:23
**urge** [1] - 55:1

### V

**Vantino** [6] - 2:12, 2:16, 8:10, 11:6, 15:21, 38:19
**VANTINO** [1] - 1:6
**Vantino's** [2] - 10:25,

11:5
**variance** [8] - 24:16, 24:20, 24:23, 24:24, 33:8, 33:18, 35:8, 36:10
**vary** [1] - 34:10
**varying** [1] - 34:10
**vehicle** [1] - 29:19
**versus** [1] - 28:17
**victim** [6] - 26:4, 26:25, 27:6, 28:13, 31:13, 33:5
**victims** [6] - 26:5, 27:13, 27:16, 33:7, 37:13, 48:6
**victims'** [1] - 27:13
**Victor** [1] - 10:25
**view** [4] - 7:5, 27:24, 35:18, 48:15
**violation** [1] - 35:18
**violence** [1] - 4:18
**voice** [1] - 7:25
**voluntarily** [1] - 23:16
**vs** [4] - 1:5, 2:12, 55:11, 56:2

### W

**wait** [1] - 30:11
**waiting** [1] - 23:22
**wake** [1] - 4:20
**Walden** [1] - 26:11
**wants** [6] - 21:9, 21:10, 23:15, 38:22, 46:11
**warrant** [1] - 6:24
**warranted** [3] - 49:22, 51:4, 53:19
**wash** [1] - 48:15
**wasting** [1] - 27:9
**watch** [1] - 52:15
**watchful** [1] - 12:8
**watching** [1] - 48:4
**ways** [2] - 20:1, 34:1
**week** [1] - 41:4
**weigh** [1] - 47:2
**weight** [2] - 41:7, 41:17
**well-settled** [1] - 6:7
**white** [1] - 23:10
**whole** [5] - 17:10, 22:25, 37:21, 39:24, 41:9
**wife** [2] - 11:5, 16:1
**willing** [2] - 22:6, 40:9
**wish** [14] - 5:6, 13:18, 21:20, 23:4, 34:9, 34:21, 35:14, 37:17, 39:5, 39:10, 39:15,

42:23, 52:23, 57:1
**wishes** [2] - 10:22, 17:18
**withdraw** [1] - 55:15
**witness** [1] - 14:8
**witnesses** [4] - 2:24, 3:1, 7:17, 18:14
**wonderful** [1] - 43:13
**wood** [13] - 2:21, 3:12, 4:5, 7:16, 17:18, 19:10, 19:14, 37:17, 39:3, 48:14, 51:9, 53:16, 55:23
**Wood** [2] - 2:15, 24:6
**WOOD** [39] - 1:17, 1:18, 2:15, 2:22, 2:25, 3:14, 3:17, 4:6, 5:3, 7:20, 7:25, 8:3, 8:6, 8:9, 8:12, 8:16, 14:7, 14:10, 14:14, 14:16, 14:18, 17:20, 17:22, 17:24, 19:24, 20:24, 21:2, 22:3, 22:11, 22:22, 23:19, 24:3, 37:9, 37:19, 51:12, 51:15, 53:25, 54:11, 57:21
**wood's** [1] - 24:20
**world** [4] - 16:20, 21:10, 50:15, 52:18
**worse** [2] - 34:15, 34:17
**wrestled** [1] - 40:17

### X

**XINIS** [1] - 1:9
**Xinis** [1] - 2:5

### Y

**year** [5] - 22:9, 38:13, 41:4, 41:20, 42:12
**years** [11] - 11:6, 14:25, 15:4, 34:20, 34:24, 44:1, 48:3, 51:8, 51:18, 51:25, 54:25
**young** [15] - 16:7, 17:3, 18:8, 18:19, 20:2, 21:2, 21:15, 21:24, 23:4, 34:11, 37:25, 38:7, 43:14, 50:14, 57:14
**younger** [3] - 8:20, 9:15, 10:11
**yourself** [4] - 8:3, 9:6, 10:23, 40:13
**yourselves** [1] - 46:21

### Z

**zip** [1] - 26:24